607 So.2d 915 (1992)
Charlotte BONNER
v.
LOUISIANA INDEMNITY COMPANY and Johnny Bias.
No. 24058-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
David L. White, Bossier City, for appellant.
Patrick H. Wright, Jr., Monroe, for appellee.
Before MARVIN, C.J., and SEXTON and NORRIS, JJ.
MARVIN, Chief Judge.
In this action for property damage to Charlotte Bonner's parked automobile caused by the driver of the vehicle insured by defendant, LIC, the defendant-insurer *916 appeals, complaining that the judgment ($2,300) includes "excessive" awards for the value of the "totaled" car ($830) and for the loss of its use ($1,320). LIC does not complain that the judgment includes $150 for appraisal and expert witness fees.
We find no error in the trial court's valuing the car, a 1984 Pontiac "1000," at $1,000 (the amount suggested by Bonner's appraiser), less 17 percent salvage value ($170), the percentage suggested by LIC's appraiser. LIC's appraiser valued the seven-year-old car at $581 after deducting for prior damage and salvage value. Smith v. English, 586 So.2d 583 (La.App. 2d Cir. 1991), writ denied. Compare Temple v. Shannon, 505 So.2d 798 (La.App. 2d Cir. 1987).
The trial court awarded damages for loss of use for five months after the accident, during which time Ms. Bonner paid her mother $10 per day, six days a week, or $1,320 for 132 days, to drive her to and from work. LIC contends that loss of use damages should have been awarded for only four weeks, or 24 workdays ($240).
Finding that the trial court abused its discretion with respect to the duration of the award for loss of use, we reduce the award to $450, representing 45 workdays over a period of 7½ weeks after the accident. We amend the judgment to reduce Bonner's total recovery from $2,300 to $1,430 and affirm the judgment as amended.

LOSS OF USE
Damages for loss of use of a "totaled" car are recoverable only for a reasonable time after the plaintiff learns that the car is a total loss. Prothro v. Dillahunty, 488 So.2d 1163 (La.App. 2d Cir. 1986); LeBouef v. Gross, 506 So.2d 879 (La.App. 1st Cir.1987). A car is deemed to be a total loss when the cost of repairing it exceeds its pre-accident value. Snow v. Mid-American Indem. Co., 557 So.2d 1073 (La.App. 2d Cir.1990). A period of 30 days after discovering that one's car is a total loss is generally deemed a reasonable time to replace the car. Prothro and LeBouef, both cited supra.
The collision on April 10, 1991, heavily damaged the right side of the 1984 Pontiac 1000 from the passenger door to the right rear fender. The car's engine apparently was not damaged. LIC's appraiser, Frankie Hano, appraised the car ten days later, on April 20. Hano classified the car as a total loss, saying it was "obvious it would cost more to fix than it was worth." In his appraisal report, Hano opined that the car was worth $700 before the accident. Hano did not calculate or deduct the car's salvage value in his report, but testified at trial that the salvage value was 17 percent of the pre-accident value, or $119.
On May 2, 1991, LIC tendered to Bonner $543.75 for the value of the car. Bonner refused the settlement offer, which she considered inadequate, and had the car appraised by Teddy Taylor on May 16. Taylor opined that the car was worth $1,000 before the accident but did not estimate the car's salvage value.
Bonner, a Monroe resident, worked six days a week at a West Monroe car wash. Her mother drove her to and from work for five months after the accident, from April 10 through September 10, 1991, Bonner's last day of work at the car wash. Bonner paid her mother $10 each day for transportation.
Bonner knew immediately after the accident that she "could not drive" her car. She was not asked at trial when she learned that the cost of repairing the car exceeded its value. The record does not contain any estimates of the repair cost. Bonner said she could not afford to replace the car because she had no cash and LIC's settlement offer was unacceptable.
The trial court awarded the full amount of Bonner's claim for loss of use, representing 132 workdays over a five-month period, at $10 per day. LIC does not dispute that it owes some amount for loss of use but claims the award should have been limited to a period of four weeks, or 24 workdays, from the date of the accident.
LIC contends Bonner knew her car was a total loss on the accident date, April 10, 1991, because she testified that she knew, *917 immediately after the accident, that she could not drive the car. This testimony, however, does not compel the conclusion that Bonner knew on April 10 that the cost of repair exceeded the value of the car.
Neither expert estimated the cost of repairing the car. Hano said Bonner was not present when he appraised the car as a total loss at her aunt's home on April 20. Bonner was not squarely asked when she learned that the car was a total loss.
On this record, we find that the earliest time for reasonably charging Bonner with knowledge that the car was a total loss is May 2, 1991, the date of LIC's tender of payment for its evaluation of the car as a total loss, less salvage value, however inadequate this amount may have seemed to Ms. Bonner. Although Bonner and LIC thereafter disputed the value of the car, prompting Bonner to hire an appraiser, there is no evidence that either party claimed at any point that the car could be repaired for less than its pre-accident value, even after Taylor had appraised the car at $1,000.
Neither a plaintiff's financial straits in general, nor an insurer's failure to negotiate an acceptable settlement of the claim, may be used to extend the recovery period for loss of use damages. Prothro, supra; Menard v. Prejean, 374 So.2d 1275 (La. App. 3d Cir.1979).
In the light of the cited jurisprudence, we find that the trial court abused its discretion in awarding loss of use damages for 132 workdays over a period of five months. On May 2, 1991, Bonner knew or should have known that her car was a total loss. Taylor impliedly confirmed her knowledge on May 16. Her recovery should not extend beyond 30 days from May 2, or beyond June 1, 1991. From the date of the accident, April 10, through June 1, 1991, we count 52 calendar days and 45 workdays. Bonner's recovery for loss of use damages should be limited to $10 per workday, the amount she paid her mother, or $450.
We shall amend the judgment to reduce the award for loss of use from $1,320 to $450.

VALUE OF CAR
The measure of damages for the value of Bonner's car is pre-accident market value, less salvage value. Smith v. English, supra. Each litigant offered expert testimony on this issue.
LIC's 28-year-old appraiser, Hano, had worked as an appraiser for only about two months when he appraised Bonner's car on April 20, 1991. The bulk of his work experience has been in repairing cars and estimating the cost of repairs. Bonner's appraiser, Taylor, had worked in the new and used car business, in sales and in management for about 30 years, regularly appraising used cars during these years.
From his experience in local used car sales, and without using the NADA or "blue book" guide to used car values, Taylor opined that the car would have been worth $1,300 before the accident if it had not had any prior damage. Taylor found prior damage to the left front headlight and fender, for which he deducted $300, reaching a net value of $1,000. Taylor did not estimate the car's salvage value.
Hano began his appraisal with the "blue book" value of Bonner's car, $1,400. Hano deducted $290 for high mileage (106,000), $280 for hail damage to the hood and roof and damage to the left front fender, $50 for a missing radio, and $25 to "clean under hood." These deductions resulted in a "book value" of $785. Hano opined that the pre-accident value was $700, saying his estimate of the prior damage was "low" and "conservative." Hano calculated the car's salvage value as 17 percent of the pre-accident value, or $119. The difference between Hano's pre-accident and salvage values is $581.
In rebuttal testimony, Taylor acknowledged that the car had some hail damage but said that in his opinion, this would not affect the car's market value because "little economy cars" such as the Pontiac 1000 were in great demand in the Monroe area as a second car, particularly for families with children in college. According to Taylor, the mileage of 106,000 on a seven-year-old car was "just a little above average" *918 and did not warrant a deduction for high mileage.
While Hano testified that the "blue book" calls for a deduction of $290 for high mileage on this car, he did not explain the basis for concluding that 106,000 miles on this particular seven-year-old car is "high mileage."
The trial court awarded $830 for the value of the car, using Taylor's valuation of $1,000, less 17 percent or $170 for salvage value. LIC contends the court should not have accepted Taylor's evaluation because Taylor made no deductions for hail damage or high mileage.
Taylor, the more experienced appraiser, explained why he made no deductions for hail damage or "high mileage." The trial court obviously found his explanations to be reasonable, as do we. We cannot say the court abused its discretion in awarding $830 for the value of the car.

DECREE
Hereby amending the judgment to reduce Bonner's total recovery from $2,300 to $1,430, we affirm the judgment as amended. Costs of the appeal are assessed one-half to each litigant.
AMENDED AND AFFIRMED.