660 So.2d 112 (1995)
Michael SUMMARELL, Individually and as Administrator of the Estate of His Minor Daughter, Elizabeth A. Summarell, Plaintiff-Appellee
v.
Rufus ROSS and Shelter Insurance Co., Defendant-Appellant.
No. 27160-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*114 Hudson, Potts & Bernstein by Brady D. King, II, Monroe, for appellants.
McIntosh, Fox & Lancaster by John M. Lancaster, Oak Grove, for appellees.
Before SEXTON, NORRIS and WILLIAMS, JJ.
SEXTON, Judge.
Rufus Ross and Shelter Insurance Company, defendants in a suit arising out of a collision between an automobile and a hay trailer towed by a tractor, contend on appeal that the trial court erroneously found Ross 100% at fault and improperly awarded excessive general and special damages. The judgment is amended and affirmed.

FACTS
After visiting her mother in Bastrop, Elizabeth Summarell, age sixteen, returned home by driving east on a straight, dry, rural two-lane road about 5:00 p.m. She estimated her speed about 50 to 55 mph. She observed the tractor and trailer ahead and moving east at a slow speed. Slowing as she approached the tractor and determining there was no oncoming traffic, Miss Summarell turned on her blinker and moved into the left west bound lane. She did not sound her horn. While she was passing, the tractor turned left across the west bound lane without giving a signal. Miss Summarell hit the brakes and tried to get back into the right east bound lane. She skidded and the left driver's side bumper hit the rear of the hay trailer.
Rufus Ross was driving east at approximately 5 to 10 mph on his tractor which pulled a homemade eighteen foot hay trailer. Neither the tractor nor the trailer had signals, lights or a slow-moving vehicle sign. Ross observed the Summarell vehicle about three-fourths of one-quarter mile behind him. In sixth gear at the time, he pulled the clutch back to slow down and turn into his driveway. Stating that both hands were occupied, Ross did not give any type of hand signal before turning left. He believed he had ample time to complete the turn. He did not hear Miss Summarell's brakes or skidding but heard the impact. Ross estimated that two feet of the trailer were still in the right east bound lane after the collision.
Trooper Charles D. Harris, Jr., the investigating officer, found the Summarell vehicle disabled in the road and the tractor pulled up into Ross's yard. The Summarell car had major damage mainly in the front left side, and the hay trailer had moderate damage on the rear of the trailer. Neither driver reported injuries. The collision occurred in the east bound lane right at Ross's private drive because the skid marks ended there close to the immobilized car. Based upon her statement and his skid marks examination which was not inconsistent, the trooper estimated Miss Summarell's speed to be 50 mph at the time the skid began. He acknowledged he had no evidence to dispute either Miss Summarell's statement that she was in the passing lane when Ross turned left across that lane or Ross's statement that he had already begun turning when Miss Summarell tried to pass. Harris gave no opinion concerning fault in the accident. He ticketed Ross for an improper turn because his tractor and trailer did not have signals or the slow moving vehicle sign. Harris listed no violations for Miss Summarell.
In reasons for judgment, the trial court concluded that the evidence showed that Miss Summarell had already moved into the passing lane when Ross commenced his left turn. Although the point of collision was in the east bound lane, the trial court noted that was due to Ms. Summarell's attempts to avoid the accident. The trial court found that Ross was 100 percent at fault in causing the accident.
The trial court awarded plaintiffs $3,190.15 for property damage based upon an estimate to repair obtained by the plaintiff rather than the $3671.58 estimate of the defendant insurer obtained a year after the accident. It also awarded plaintiff $3500.00 for the loss of use of the car and inconvenience. The court found that Elizabeth Summarell suffered soft tissue injury. A general damage award of $1,500.00 was rendered along *115 with $125 for doctor's bills. The court awarded $1,580.00 in storage charges which included a $75.00 towing fee.

DISCUSSION
A court of appeal may not set aside a trial court's factual finding in the absence of "manifest error" or unless it is "clearly wrong." In order to reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding and, also, must conclude that the record establishes that the factual finding is clearly wrong. The reviewing court must determine, not whether the trial court was right or wrong, but whether the conclusion was reasonable. Even if the appellate court feels its own evaluation and inferences are more reasonable that the trial court's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed where conflict exists in testimony unless the testimony is so contradicted or internally inconsistent that manifest error or clear wrongness is present. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

LIABILITY
LSA-R.S. 32:104. Turning Movements and Required Signals.
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
Louisiana jurisprudence confirms the statutory law by holding that both the left-turning motorist and the overtaking, passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. Neal v. Highlands Insurance Co., 610 So.2d 177 (La.App. 3 Cir.1992), writ denied, 612 So.2d 100 (La.1993).
Walton v. Bellard, 581 So.2d 307, 310 (La. App. 1st Cir.1991), writ denied, 585 So.2d 567 (La.1991), summarized the law on left turning motorists:
The law sets forth the duties imposed on a left turning driver as well as a passing driver. The duties imposed upon the plaintiff, a left turning motorist, are found in La.R.S. 32:104. The plaintiff was required to give a signal of her intent to make a left turn at least 100 feet before reaching the private driveway. In addition to giving the proper signal, the plaintiff is required to make a proper observation that the turn can be made without endangering a passing vehicle. Bamburg v. Nelson, 313 So.2d 872, 875 (La.App.2d Cir.), writ denied, 318 So.2d 57 (La.1975). The plaintiff's failure to meet these duties does not automatically absolve the defendant from liability.
The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La.R.S. 32:73 and 75. A passing driver is not automatically required to sound his horn when executing a passing maneuver. The statute simply mandates that the passing driver sound his horn when the circumstances dictate that it is reasonably necessary for safe execution of a passing maneuver. In other words, the facts of a case dictate whether the passing driver had a duty to sound his horn. Doucet v. Ryder Truck Rental, Inc., 415 So.2d 618, 620 (La.App. 3rd Cir.1982).
Generally, a passing driver does not have a duty to give an audible signal when the preceding vehicle is occupying its own lane of traffic, though traveling slowly. Soileau v. Hanover Insurance Company, *116 232 So.2d 128, 130 (La.App. 3rd Cir.1970). The purpose of sounding the horn is to warn the overtaken driver to give the passing driver necessary clearance in which to complete his pass. The purpose of this duty is not to warn the overtaken driver not to turn left. Barber v. Sumrall, 206 So.2d 560, 561-562 (La.App. 1st Cir.1968).
In Hall v. Jackson, 215 So.2d 367, 369 (La.App.2d Cir.1968), the court held that the driver who was following a slow moving vehicle was entitled to pass where the preceding driver had not signaled his intent to make a left turn. It is unreasonable to require the following driver to anticipate that the preceding driver will make a left turn into an obscure private driveway based on the mere fact that the preceding vehicle was traveling slowly. Barber v. Sumrall, 206 So.2d at 562.
Acknowledging that Ross was not free from fault, defendants suggest in brief that the parties were equally at fault. Findings of fault are factual determinations which are not disturbed even if other finders of fact may have allocated fault differently. Nowell v. State Farm Mutual Auto Insurance Co., 576 So.2d 77 (La.App.2d Cir.1991), writ denied, 580 So.2d 923 (La.1991). Defendants assert that Summarell's testimony was confused while Ross's was very clear. Ross stated that Miss Summarell was far enough back that he was certain he could complete the left turn safely. Since the skid marks were 69 feet, defendants argue that Miss Summarell was not paying attention or she would have seen Ross turn before she began passing.
The trial court's conclusions that Miss Summarell was in the passing lane when Ross turned left is not manifestly erroneous or clearly wrong. Miss Summarell's estimate of speed was supported by the investigating officer. The trial court's conclusion that Miss Summarell would not have moved to the passing lane if Ross had already blocked it by turning was a reasonable factual inference. Even though another trier of fact may have found Ross's account credible, a reasonable factual basis for the trial court's assessing Ross 100 percent at fault exists in this record and is not clearly wrong.

GENERAL DAMAGES
There is no mechanical rule for determining general damages and the facts and circumstances of each case must control. The initial inquiry is whether the award for the injuries and their effects under the particular circumstance of the injured person is a clear abuse of the great discretion of the trier of fact. Only if the award is an abuse of discretion is a resort to prior awards appropriate. Angeron v. Martin, 93-2381 (La. App. 1 Cir. 12/22/94), 649 So.2d 40. The appellate court's function is not to determine whether a different award may have been more appropriate, but whether the trial court's award is reasonably supported by the record and justifiable inferences from the record. Neal v. Highlands Insurance Co., supra.
Defendants assert that the $1500.00 award for Miss Summarell's injuries, pain and suffering was excessive, since Miss Summarell, sore for 7-10 ten days, had no disability, no treatment, and no prescription medicine. Based on the medical information in the record, the trial court found that Miss Summarell suffered soft tissue injuries with symptoms of soreness aches, pains and headaches for approximately two weeks. She also had nightmares after the accident. Ten days after the accident she was still having such discomfort that her father took her to a chiropractor who diagnosed acute muscular strain and restricted spinal joint motion. The chiropractor recommended treatment, but Miss Summarell did not return. Based upon this record, this $1,500.00 award is not an abuse of the great discretion of the trial court.

PROPERTY DAMAGES
When property is damaged through the fault of another, the primary goal is to restore the property, as nearly as possible, to the state it was in immediately prior to the damage. It is well-settled that the measure of property damage is the cost of restoring the property to its former condition. Three tests have been used to determine property damage: (1) Cost of restoration if the damaged item can be adequately *117 repaired; (2) Value differential, the difference in value prior to and after the damage; (3) Cost of replacement, less depreciation, if the value before and after the damage cannot be reasonably determined or if the cost of repair is more than the value of the damaged item. When a vehicle is damaged, the owner is entitled only to the amount it will cost to place the auto in the same condition it was in before the accident. No mechanical rule can be applied with exactitude. Each case must rest on its own facts and circumstances. Davies v. Automotive Casualty Insurance, 26,112 (La.App.2d Cir. 12/7/94) 647 So.2d 419.
The trial court found that the value of the car was $3500 based on the appraisal made by the adjuster who had deducted $200 for damage to the rear of the vehicle. Finding that damage occurred while in storage, the trial court did not deduct that amount. On February 16, 1993, Ken's Kustom Body Shop gave a price of $3,190.15 for repairing the car. A year after the accident, the adjuster estimated repairs would cost $3,671.58. The court accepted the body shop's estimate and awarded $3,190.15 for property damage.
Contending that plaintiffs offered no evidence concerning the car's actual cash value and that even plaintiffs' repair estimate exceeded the car's value, defendants argue that plaintiffs' recovery should be limited to actual cash value less salvage value or actual cash value with an assignment of salvage value to defendants. Mr. Summarell testified he had purchased the newly painted and fully loaded 1986 Chrysler New Yorker around the end of October before the February accident. Defendants' appraisal valued the "very clean" car at $3500 less damage of $200 which the court found happened in storage. Even defendants' valuation exceeded the plaintiffs' repair estimate. Finding no manifest error in the trial court's factual determination of property damage, we will not disturb this award on appeal.

LOSS OF USE OF AUTOMOBILE AND INCONVENIENCE
The defendants contend the trial court erred in awarding plaintiffs $3,500 for loss of use of the vehicle. Noting that defendants argued that thirty days was a reasonable time for loss of use of the vehicle, the trial court's award was based upon the fact that defendants waited a year and a day to appraise the car. The court allowed thirty days after defendants' appraisal of damage and awarded $3500 for loss of use for thirteen months.
Relying on Bonner v. Louisiana Indemnity Co., 607 So.2d 915 (La.App.2d Cir.1992), defendants argue that the trial court essentially awarded penalties in an excessive loss of use award. Although involving a totalled vehicle, Bonner could not afford to replace the car. Bonner was permitted 30 days past when she knew her car was totalled, or 45 workdays at $10 per day, the amount she paid to be driven to work. We held that the lack of financial ability or the insurer's failure to negotiate a settlement of the claim may not be used to extend the recovery period for loss of use damages.
Although the accident occurred on February 1, 1993, and on February 16, 1993, Mr. Summarell got the estimate from the body shop for the cost of repair, the testimony does not compel the conclusion that Mr. Summarell knew the car was a total loss. The defendant waited one year to appraise the vehicle and declare it a total loss. Until that time, Mr. Summarell had requested the insurance company to repair his vehicle, and the defendant insurance company did nothing. Mr. Summarell did not learn that his vehicle was totalled until the defendant insurance company appraised the vehicle as a total loss. Contrary to the defendants' argument, our holding is consistent with Bonner, where we found that Bonner was not charged with knowledge that the car was a total loss until the insurer tendered payment for its evaluation of the car as a total loss. Therefore, we conclude that the trial court was not manifestly erroneous in awarding $3500 for a 13-month loss of use of the vehicle.

STORAGE/WRECKER FEE AWARD
The trial court also awarded the plaintiff $1,580.00 in storage fees. This amount is based upon $4.00 per day for 395 days. The court found that the plaintiffs *118 were entitled to recover storage fees for 30 days beyond the time the adjuster examined the car a year and a day after the accident.
Although we agree that the plaintiffs are entitled to recover for storage fees, the award does not conform to the evidence. The plaintiffs introduced the body shop storage charges of $9.50 per day from February 1 through May 31, 1993, totalling $1140.00. Mr. Summarell requested that the storage company return the vehicle to his house on or about June 1, 1993, when he learned that he was being charged for storage. No storage bill was introduced into evidence other than the body shop bill for $1140.00.
Without stating its reasons, the trial court found that $4.00 per day was a reasonable award for storage and awarded that amount for 395 days. We have no reason to conclude on this record that the $9.50 per day fee charged by the body shop is unreasonably high. Accordingly, we amend the judgment reducing the award for storage fee costs to the amount of $1140.00 (120 days at $9.50/day) plus the $75.00 towing fee.

CONCLUSION
In their appellate brief, plaintiffs request that the judgment be amended to award Mr. Summarell lost wages, increased damages awards, and damages for frivolous appeal. LSA-C.C.P. Art. 2133 provides that an appellee does not have to answer the appeal unless he seeks to have the judgment modified, or unless he demands damages. Arguments in brief do not satisfy that requirement. Simmons v. Yelverton, 513 So.2d 504 (La.App.2d Cir.1987). Since plaintiffs neither appealed nor answered the appeal, those arguments are not considered on appeal.
The judgment of the trial court is amended to reduce the award for storage from $1580.00 to $1140.00. In all other respects, the judgment is affirmed as follows:

General damages: $1,500.00
Medical Bills: 125.00
Property damages: 3,190.15
Loss of Use: 3,500.00
Storage/Wrecker: ($1140 + $75) 1,215.00
 _________
 $9,530.15

For the foregoing reasons, the judgment is amended and, as amended, is affirmed at defendant's costs.
AMENDED AND AFFIRMED.