# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 04-0005


ROGER D. CLARK

VERSUS

BEAU C. MCNABB AND SHELTER MUTUAL INSURANCE COMPANY


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2001-1972 A,
HONORABLE MARK A. JEANSONNE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy H. Ezell, Judges.

**AFFIRMED.**

**John T. Bennett**
**Attorney at Law**
**Post Office Box 275**
**Marksville, LA 71351**
**(318) 253-4631**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    Roger D. Clark

**Brandon A. Sues**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA 71307**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Shelter Mutual Insurance Company

PETERS, J.

This litigation arises from a March 31, 2001 motor vehicle accident, wherein Beau C. McNabb totaled a 2000 Toyota Tacoma truck owned by Roger D. Clark and insured for property damage by Shelter Mutual Insurance Company (Shelter Mutual). Shelter Mutual now appeals a trial court judgment rendered against it, awarding Mr. Clark $12,855.00 in damages. For the following reasons, we affirm the trial court's judgment.

Mr. Clark contacted Shelter Mutual concerning settlement of his property damage claim immediately after the accident. In anticipation of settling his claim, and in order to protect the salvage value, Mr. Clark stored the vehicle in his garage. On April 3, 2001, he consulted the National Automobile Dealers Association Official Used Car Guide (NADA Guide) and the Kelley Blue Book in an effort to determine the value of his Toyota at the time of the accident. These reference books established that, on March 31, 2001, a similarly equipped 2000 Toyota driven 23,000 miles had an actual cash value between $22,650.00 (NADA Guide) and $23,000.00 (Kelley Blue Book).

After receiving notice of the property damage claim, Kathy Boudreaux, a senior field adjuster for Shelter Mutual, went to Mr. Clark's house and inspected the wrecked vehicle. Because the odometer was destroyed in the accident, she obtained the vehicle's mileage estimate from Mr. Clark (21,500 miles). She then used CCC Information Services (CCC) to conduct a local market evaluation of the vehicle's cash value. Based on the information provided by Ms. Boudreaux, CCC established the Toyota's actual cash value at $20,600.00.

The specific negotiation process that followed is disputed. Ms. Boudreaux

testified that Mr. Clark rejected her offer of $19,600.00,[1] and based on that rejection, Shelter Mutual unconditionally tendered $17,540.00. Ms. Boudreaux explained that this amount represented the CCC value less the deductible and less the salvage value. Soon thereafter, Shelter Mutual unconditionally tendered an additional $855.00. The sum of these two tenders, $18,395.00, represented the actual cash value of the vehicle less the deductible and salvage value. According to Ms. Boudreaux, Mr. Clark left Shelter Mutual with no other option because he refused to transfer the Toyota's title to Shelter Mutual in exchange for payment of its salvage value.

Mr. Clark testified that he rejected Ms. Boudreaux's offer as being too low, and he offered to settle the entire matter for $22,000.00, or the Kelly Blue Book value less the deductible. According to Mr. Clark, at no time did Shelter Mutual offer to settle the claim for the actual cash value of the vehicle less the deductible, and he never transferred the title because he was never paid the salvage value. On May 1, 2001, after deciding that any further attempt to settle the dispute would be unsuccessful, Mr. Clark instituted this suit.

At trial, Henry D. Smith, a Lena, Louisiana automobile salvage dealer, testified on behalf of Shelter Mutual concerning the salvage value of the Toyota. Mr. Smith, who was recognized by the trial court as an expert in evaluating vehicle damage, estimated the salvage value to be $3,350.00. Mr. Smith performed his evaluation in April of 2002.

At the conclusion of the trial, the trial court rendered judgment in favor of Mr. Clark. The total judgment represented an award of $3,355.00 as a balance due under the policy for the property damage; $3,000.00 in general damages; $2,500.00 in

---

[1]This offer was based on the CCC estimate less the deductible of $1,000.00.

statutory penalties; and $4,000.00 in attorney fees. The trial court also ordered Mr. Clark to transfer the title of the Toyota to Shelter Mutual and to allow Shelter Mutual to retrieve the salvage at his residence. Shelter Mutual timely appealed the judgment.

**OPINION**

Within days after the accident, Shelter Mutual had investigated the claim and determined that Mr. Clark's 2000 Toyota Tacoma was a total loss. The record does not establish the date that Ms. Boudreaux inspected the vehicle, but all of the settlement negotiations occurred between that date and the day that Mr. Clark filed suit, May 1, 2001. Within that time period, Shelter Mutual unconditionally tendered $18,395.00, which represented the undisputed amount of the claim.

On appeal, Shelter Mutual argues that it could do no more toward settlement because Mr. Clark refused to transfer the title in exchange for payment of salvage value. In doing so, Shelter Mutual asserts that the trial court erred in determining that Mr. Clark had agreed to release the title. This is a factual determination made by the trial court and is subject to a manifest error analysis. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Ms. Boudreaux testified that she initially gave Mr. Clark the choice of accepting $19,600.00 in full settlement or accepting $17,540.00 and retaining the wrecked vehicle for its salvage value. She explained that she based the $2,060.00 salvage value assigned to Mr. Clark's vehicle on a contract Shelter Mutual had with a Monroe, Louisiana salvage buyer, who purchased all of Shelter Mutual's wrecked vehicles for ten percent of the actual cash value. She further explained that after Mr. Clark rejected this offer, Shelter Mutual unconditionally tendered $17,540.00, and later unconditionally tendered an additional $855.00. The second amount was tendered after her branch manager suggested that she attempt to find another vehicle in the area

3

comparable to Mr. Clark's vehicle. She increased the unconditional offer based on her additional research. However, Ms. Boudreaux acknowledged that after Mr. Clark rejected her initial offer, she made no further effort to settle the salvage. In other words, she simply responded as if the matter was completely settled.

Mr. Clark testified that he rejected the $19,600.00 offer and countered by offering to settle for $22,000.00 with Shelter Mutual taking the salvage. Although he did not transfer title to the salvage, at no time did he refuse to transfer the title to Shelter Mutual. Simply stated, he and Shelter Mutual never reached an agreement on its value. In fact, Mr. Clark testified that he made it clear to Shelter Mutual, through his conversations with Ms. Boudreaux, that he had no desire to retain the salvage and wanted that issue settled as well. Considering the record as a whole, we find no manifest error in the trial court's conclusion that Mr. Clark had not refused to transfer title to the wrecked automobile in exchange for payment of its salvage value.

Shelter Mutual also asserts that the trial court erred "in failing to consider that Louisiana law does not require an insurance company to use exclusively the NADA Guide or Kelly Blue Book in estimating the actual cash value of a vehicle." It further asserts that, assuming the proper use of the NADA Guide, the trial court erred in failing to reduce the award for excessive mileage. We find no merit in either of these assertions.

Whether a NADA Guide or a Kelley Blue Book valuation is superior to another calculation is a question of fact that must be examined on a case-by-case basis. Although the Louisiana Supreme Court noted the "industry-wide" use of the NADA Guide in *State Farm Mut. Auto Ins. Co. v. Berthelot*, 98-1011 (La. 4/13/99), 732 So.2d 1230, this court, in *Hayes v. Allstate Ins. Co.*, 99-1558 (La.App. 3 Cir. 3/1/00), 758 So.2d 900, *writ denied*, 00-1587 (La. 8/31/00), 766 So.2d 1280, held that a trial court

4

is not always required to use the NADA Guide value. This court also noted with interest that:

> La.R.S. 32:702(11), located within the Chapter entitled "Vehicle Certificate of Title Law" provides that "The term 'total loss' means a motor vehicle which has sustained damages equivalent to seventy-five percent or more of the market value as determined by the most current National Automobile Dealers Association Handbook."

*Id*. at 904.

Additionally, other circuits have supported the contention that the valuation method used by the trial court is a question of fact. *Bonner v. Louisiana Indem. Co.*, 607 So.2d 915 (La.App. 2 Cir. 1992), (accepting a valuation made without using the NADA Guide); *Brown v. Morgan*, 449 So.2d 606 (La.App. 1 Cir. 1984), (accepting a valuation higher than the NADA Guide); *Usand v. New Orleans Pub. Serv., Inc.*, 438 So.2d 258 (La.App. 4 Cir. 1983), (adjusting the value given by the NADA Guide).

We need not address the issue of whether the trial court is limited to the use of the NADA Guide, and because the trial court did not use the NADA Guide in its assessment, we find no merit in this assignment of error. In valuing the vehicle at $22,750.00, the trial court specifically stated that it placed the value "somewhere in between the NADA [Guide] value and the Kelly [Blue Book value]." Thus, the trial court did not limit itself to the NADA Guide and, instead, valued the vehicle based on its own assessment of the evidence presented.

The assignment addressing the excessive mileage issue arises from conflicting testimony concerning the mileage registered by the truck at the time of the accident. Because the odometer was destroyed in the accident, Mr. Clark estimated the vehicle's mileage as 21,500 miles. Ms. Boudreaux related this mileage estimation to CCC for use in its valuation of the vehicle. However, Mr. Smith testified that when he examined the vehicle, he observed an oil change sticker that placed the next oil change

5

at 31,000 miles. Considering that the oil should be changed every 3,000 miles, Mr. Smith concluded that, at the time of the accident, the vehicle had at least 28,000 miles on it.

Shelter Mutual asserts that even if the trial court were to use the NADA Guide, the reference book provides for a $175.00 deduction for this higher mileage. In its oral reasons for judgment, the trial court did not comment concerning the mileage issue and, considering that the trial court did not use the NADA Guide in valuing the vehicle, we find this assignment to be without merit.

Additionally, Shelter Mutual argues that the trial court erred in concluding that Mr. Clark was due any additional payment under its policy. In rejecting this argument, we note that the trial court calculated this additional payment totally on the evidence presented by Shelter Mutual. Ms. Boudreaux testified that the $18,395.00 unconditional tender represented the actual cash value of Mr. Clark's Toyota less the $1,000.00 deductible and less the salvage value. Mr. Smith, Shelter Mutual's own witness, testified that Mr. Clark's Toyota had a salvage value of $3,350.00. The trial court simply added these three amounts to reach the actual cash value of the vehicle, $22,750.00.[2] Shelter Mutual cannot be allowed to complain, when the judgment rendered against it is based on its own evidence.

Shelter Mutual also argues on appeal that Mr. Clark is not the owner of the wrecked vehicle and, therefore, cannot recover the salvage value. This issue arises from Mr. Clark's effort to avoid paying sales taxes on a replacement vehicle.

On May 10, 2001, or less than two months after the accident and only nine days after filing suit, Mr. Clark negotiated the purchase of a new vehicle from All Star

---

[2]The addition contains a $5.00 error. That is explained by the fact that the trial court, in its reasons for judgment, cited Mr. Smith's estimate as $3,355.00 instead of $3,350.00.

6

Toyota in Alexandria, Louisiana.  As a part of the purchase, Mr. Clark executed the section on the back of the title to the wrecked 2000 Toyota entitled "**ASSIGNMENT OF TITLE BY REGISTERED OWNER,**" purporting to transfer the title to All Star Toyota.  Contemporaneous with this action by Mr. Clark, a representative of All Star Toyota accepted the vehicle by signing the same section as the buyer.  Notably, on that same day and in another section on the title entitled "**FIRST RE-ASSIGNMENT BY LICENSED DEALER**," the representative of All Star Toyota signed and purportedly transferred the vehicle to another entity described as "Shelter Ins. Co." This purported transfer contains no corresponding appearance by the named buyer.

Shelter Mutual asserts that by transferring title to All Star Toyota, Mr. Clark ceased to be the owner of the wrecked Toyota and was no longer entitled to recover salvage value because he could not transfer title to Shelter Mutual.  At trial, Mr. Clark explained that he assigned the title to All Star Toyota in order to save sales tax on a replacement vehicle, that both All Star Toyota and Shelter Mutual was aware of his intent, and that the dealership immediately assigned the vehicle back to Shelter Mutual.  According to Mr. Clark, the assignment did not occur until it was clear that he and Shelter Mutual could not reach an agreement and that he needed the replacement vehicle.  The trial court obviously accepted this explanation as fact, and we find no manifest error in that determination.  *Rosell*, 549 So.2d 840.

All Star Toyota is a party needed for a just adjudication of the proceedings as defined by La.Code Civ.P. art. 641(2)(b).  Shelter Mutual could have raised this issue at the trial through a peremptory exception pursuant to La.Code Civ.P. art. 927(A)(3), but, instead, has only raised the exception in its brief on appeal.  We decline to supply the exception on our own motion pursuant to La.Code Civ.P. art. 927(B), as Shelter Mutual's rights are protected by the language of the judgment which provides in part:

7

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the plaintiff, Roger Clark, release the title to the 2000 Toyota Tacoma to defendant, Shelter Mutual Insurance Company, and that defendant, Shelter Mutual Insurance Company, be allowed to retrieve the salvage at the plaintiff's residence, upon payment of the amount of $3,355.00 for vehicle damage (the court having determined that the actual cash value of the 2000 Toyota Tacoma being $22,750.00 less the deductible of $1,000.00 less the credit owed to Shelter Mutual Insurance Company in the amount of $18,395.00 for property damage payments already made), together with legal interest thereon from the date of judicial demand until paid.

The trial court clearly contemplated Mr. Clark transferring a valid title contemporaneous with Shelter Mutual's payment of the balance due under the property damage provisions of the policy. Shelter Mutual is not obligated to pay that portion of the judgment unless, and until, Mr. Clark provides a clear title. Thus, we find no merit in this argument.[3]

Shelter Mutual also contends that the trial court erred in finding that it was arbitrary and capricious in adjusting the property damage claim and in awarding general damages, penalties, and attorney fees.

Louisiana Revised Statutes 22:1220(A) provides:

An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

---

[3]We are not called upon to consider whether Mr. Clark violated the tax laws of this state by using the vehicle as an offset against the payment of sales taxes or whether Shelter Mutual is entitled to a credit for the sales tax saved as those issues are not properly before us.

The statute governing the payment of a property damage claim on an automobile is La.R.S. 22:658, which provides in pertinent part that the insurer "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured or any party in interest."[4] La.R.S. 22:658(A). When an insurer fails to pay the claim within thirty days, and when the failure to pay is found to be arbitrary and capricious, the insurer shall be subject to a penalty "of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater . . . together with all reasonable attorney fees . . . or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due."

Additionally, La.R.S. 22:1220(B)(5) includes as a breach of one of the duties of good faith and fair dealing the failure "to pay any amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." Recoverable damages for violation of this duty are set forth in La.R.S. 22:1220(C) which provides in pertinent part that "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

In the matter now before us, Shelter Mutual timely tendered a significant portion of the vehicle's value, but failed to pay the salvage value within thirty or sixty days from receipt of satisfactory proof of loss. In concluding that Shelter Mutual was arbitrary and capricious in adjusting the claim, the trial court stated that Mr. Clark had

---

[4]Shelter Mutual does not assert that it did not receive satisfactory proof of loss.

9

immediately performed research on the value of the vehicle and, within a week after the accident, had provided Shelter Mutual with a "valid and credible estimate." The trial court also concluded that Shelter Mutual's actions thereafter constituted nothing more than an effort to reduce its costs at the expense of Mr. Clark.

In *Calogero v. Safeway Ins. Co. of Louisiana*, 99-1625, p. 5 (La. 1/19/00), 753 So.2d 170, 173, the supreme court stated that:

> The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding which may not be disturbed unless manifestly erroneous. *Brinston v. Automotive Cas. Ins. Co.*, 96-1982 (La.App. 4 Cir. 12/3/97), 703 So.2d 813, 816; *Marcel v. Allstate Ins. Co.*, 536 So.2d 632 (La.App. 1 Cir. 1988), *writ denied*, 539 So.2d 631 (La.1989). We have described an insurer's actions as "arbitrary and capricious" when its willful refusal of a claim is not based on a good faith defense, *Louisiana Maintenance Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993), or is unreasonable or without probable cause, *Darby v. Safeco Ins. Co.*, 545 So.2d 1022, 1029 (La.1989). However, where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties. *Darby, supra*. But, where an insurer is found to have acted arbitrarily, capriciously, or without probable cause, the insurer *shall* be liable for damages as a result of the breach, and *may* be liable for penalties not to exceed two times the damages or five thousand dollars, whichever is greater. La.R.S. 22:1220, subd. A and C.
>
> We agree with the trial court's finding that Shelter Mutual was arbitrary and

capricious in adjusting the claim. Shelter Mutual timely *began* the investigation of the loss and timely *made* a partial tender of $18,395.00. What Shelter Mutual did not do was timely *complete* the investigation of the loss.

As did the trial court, this court questions whether Shelter Mutual used CCC to properly adjust the claim or simply to reduce its exposure. Ms. Boudreaux suggested that Shelter Mutual used CCC because it investigated the "local market" as opposed to the national market research used by the NADA Guide. When compared to the NADA Guide values, CCC not only started with a base value less than the NADA

Guide, but consistently used lower estimates of various optional equipment.[5]  It is highly questionable whether a Louisiana vehicle is worth so much less than similar vehicles within other states.

Additionally, Ms. Boudreaux's testimony raises questions concerning her intent in adjusting this claim on behalf of Shelter Mutual.  She noted that one of the vehicles used by CCC for its analysis had a list price of $22,250.00 but that the seller would "take" $20,000.00.  Mr. Clark was entitled to the full value of his vehicle and was not required to take less.  Additionally, when Mr. Clark expressed dissatisfaction with the original $17,540.00 offer, Ms. Boudreaux immediately found comparable vehicles which justified increasing the settlement offer by $855.00.

---

[5]The NADA Guide actual cash value base was $19,950.00 (which included air conditioning) while the CCC actual cash value base was $17,875.00 (which did not include air conditioning). Examples of other differences include the assignment by CCC of no value to the SR5 Trim Package ($550.00 by NADA Guide), a CCC $75.00 value to the TRD Off-Road Package ($700.00 by NADA Guide), and a CCC $100.00 value to the power windows ($175.00 by NADA Guide).  Other optional equipment was similarly undervalued compared to the NADA Guide and Kelley Blue Book.

The most telling aspect of the adjustment process, establishing Shelter Mutual's arbitrary and capricious actions, involves its evaluation of the salvage. Initially, Ms. Boudreaux did not obtain a salvage value estimate. Rather, she relied on Shelter Mutual's contract with the Monroe salvage yard and arbitrarily assigned a ten percent value to the salvage. Had she further investigated the claim by, immediately, obtaining an estimate from Mr. Smith, she would have had the amounts before her to negotiate in good faith. In fact, she would have satisfied Mr. Clark's settlement request.[6]

Concerning the award of penalties and attorney fees, the supreme court in *Calogero*, 753 So.2d 170, 174, explained:

> We have previously recognized the close relationship between the conduct prohibited in La.R.S. 22:658, subd. A(1) and the conduct prohibited in La.R.S. 22:1220, subd. B(5). *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La.5/20/97), 694 So.2d 184, 192, n.14. In fact, the conduct prohibited is virtually identical, i.e., failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious or without probable cause. The primary difference is that under La.R.S. 22:658, subd. A(1), the insurer must pay the claim within 30 days of receiving satisfactory proof of loss, rather than the longer 60-day period allowed under La.R.S. 22:1220, subd. B(5).
> . . . .
> [U]nlike penalties under La.R.S. 22:1220, subd. C, penalties and attorney fees under La.R.S. 22:658, subd. B(1) are mandatory, rather than discretionary, where a breach of La.R.S. 22:658, subd. B(1) has occurred.

The supreme court went on to explain that "where La.R.S. 22:1220 provides the greater penalty, La.R.S. 22:1220 supercedes La.R.S. 22:658 such that [the plaintiff] cannot recover penalties under both statutes." *Id.* However, because La.R.S. 22:1220

---

[6]The sum of the amount tendered ($18,395.00), the deductible ($1,000.00), and the salvage value ($3,350.00) is $22,745.00. Mr. Clark testified that he would have settled the claim for $22,000.00 with Shelter Mutual taking the salvage.

does not provide for attorney fees, the plaintiff is entitled to recover attorney fees under La.R.S. 22:658 for [defendant's] arbitrary and capricious behavior *Id.* While Mr. Clark was entitled to a larger penalty under La.R.S. 22:1220, he has not appealed or answered Shelter Mutual's appeal seeking an increase in the award. Therefore, we affirm the trial court's statutory penalty award of $2,500.00, and the award of attorney fees under La.R.S. 22:658.

Finally, we address the general damage award. In making this award, the trial court stated that this award would compensate Mr. Clark for the "anxiety and inconvenience" he suffered as a result of Shelter Mutual's actions and for the storage costs associated with the vehicle remaining in his garage during the litigation. The trial court did not differentiate between the two elements of damages in its award. Shelter Mutual challenges the entire award, asserting that such damages are not available under the terms of its policy.

In the section governing property damage coverage, the Shelter Mutual policy provides:

> **We** will pay for direct and accidental loss to the **described auto** caused by collision between it and another object or by its upset. But **we** will pay only for the amount of each loss above the deductible stated in the Declarations. **You** do not pay **your** deductible if the collision is with another **auto** insured by **us**, as **we** pay it.

Additionally, the policy imposes on Mr. Clark the duty to "[t]ake reasonable steps after loss to protect the vehicle and its equipment from further loss." In exchange for its insured's protection of the vehicle and its equipment, Shelter Mutual agrees to "pay reasonable expense[s] incurred in providing that protection."

The policy provisions relied upon by Shelter Mutual are clearly applicable when the insurer is not arbitrary and capricious in adjusting the claim. Breach of the duty imposed by La.R.S. 22:1220(A) such that the insurer is found to be arbitrary and

capricious renders the insurer "liable for any damages, foreseeable or not, that are a direct consequence of its failure to perform." *Williams v. Louisiana Indem. Co.*, 26-887, p. 3 (La.App. 2 Cir. 6/21/95), 658 So.2d 739, 742. There is no question that Mr. Clark suffered anxiety and mental anguish as well as inconvenience associated with his required storage of the wrecked vehicle. While he performed as required under the policy, Shelter Mutual failed in that regard. We find no abuse of discretion in the trial court's award.

## DISPOSITION

We affirm the trial court judgment in all respects. We assess all costs to Shelter Mutual Insurance Company.

**AFFIRMED.**