BROWN, ATTORNEY GENERAL OF OHIO, *v.* MARKET
DEVELOPMENT, INC., ET AL.

[Cite as Brown v. Market Development
(1974), 41 Ohio Misc. 57.]

(No. A-737002—Decided February 21, 1974.)

Court of Common Pleas of Hamilton County.

*Mr. Robert B. Meany* and *Mr. Marvin I. Schotland,*
assistant attorneys general, for plaintiff.
*Mr. Arnold Morelli,* for defendants.

BLACK, J. William J. Brown, Attorney General of the
state of Ohio, brought this action under R. C. 1345.01
through 1345.13 (the Consumer Sales Practices Act), ask-
ing that certain practices of the defendants be declared
deceptive and unconscionable under the terms of that Act,
and that these practices be enjoined insofar as they re-
late to or are directed at non-Ohio consumers. Defendants
have previously entered into a consent order of this Court
of Common Pleas, in a prior and separate action brought
by the Attorney General, whereby the defendants were
enjoined from engaging in deceptive and unconscionable

practices directed at "consumers." Interpreting the meaning of that earlier injunction as protecting only Ohio consumers, the defendants have complied therewith and have ceased to engage in the prohibited transactions only as they are directed at Ohio consumers. Conceding for the purposes of this action that defendants' interpretation is correct, the Attorney General brings this present action in order to enjoin deceptive and unconscionable acts and practices which are directed at non-Ohio consumers.

The case comes now for consideration of the defendants' Motion to Dismiss the Complaint. Defendants claim that as a matter of law, the Ohio Consumer Sales Practices Act cannot and should not be interpreted to protect non-Ohio consumers. In order to focus on this legal question, the defendants were permitted to withdraw their previously filed Answer, and their Motion for a Summary Judgment and Stay, "with no prejudice."

The Motion to dismiss is submitted on the extensive briefs of both parties, and on informal oral arguments.

For the purposes of this Motion to Dismiss, the allegations in the Complaint are assumed to be true, and may be summarized as hereinafter set forth. Defendants Market Development, Inc., and Raymond Anderson solicit monies by preparing promotional letters in Ohio and mailing them to non-Ohioans. These letters do not tell the consumer he is being solicited to buy goods from a mail order business but instead tell him that he has won a vacation to Florida, a $100 certificate good for the purchase of a regularly priced $169.50 sewing machine, and a treasure chest full of nationally advertised products. The consumer is told that he received the letter because either (1) a computer selected his name while picking a sweepstakes winner, or (2) he was selected as a second prize winner in a sewing machine contest, or (3) he was selected as a sweepstakes first place prize winner. In fact, no such sweepstakes or contest exists and the consumer has not won anything. Instead, consumers' names are taken directly from mailing lists purchased by defendants, and the consumer must pay a $15 fee in order to get his "prize."

Defendants also promise that dissatisfied consumers will get all their money back. Consumers have relied on this promise when they discovered that the "vacation" consisted only of a few days lodging available during very limited times of the year and includes a high-pressure land sales pitch; and that the "treasure chest" was only a cardboard box full of inexpensive samples of household items. When consumers ask for their money back, they generally do not have it returned but rather receive more promotional letters saying they have been selected as contest winners.

Defendants also tell consumers they have won a $100 certificate to be used towards the purchase of regular priced $169.50 sewing machine. However, these machines are sold by defendants for $69.50. By falsely advertising a "regular price" of $169.50 and telling the consumer that the $69.50 price is available only to contest winners, defendants inflate the actual value of the machine and deceive consumers by advertising a price advantage or reduction which does not exist.

The question presented by defendants' Motion to Dismiss is whether or not the Ohio Consumer Sales Practices Act can and should be interpreted to apply to deceptive and unconscionable practices directed only to non-Ohio consumers. Briefly, defendants claim: that the Act does not by its terms expressly apply to consumer transactions between the Ohio supplier and non-Ohio consumers; that it can not or should not be inferred that the legislature intended that the Act should so apply; that if it were so interpreted, it would be unconstitutional, on two separate grounds. On the other hand, the Attorney General states that the Act should be interpreted so as to apply to an Ohio supplier who engages in unconscionable or deceptive practices originating in Ohio, regardless of whether the consumers are in Ohio or outside Ohio, and that there is no constitutional violation in applying the Act to mailings directed to non-Ohio consumers.

The court finds that the Motion to dismiss is not well taken and will deny the same. This ruling is based on two conclusions: (I) that the legislature intended the Ohio

Consumer Sales Practices Act to apply to all Ohio suppliers engaged in consumer transactions, irrespective of the location of the consumer, whether within or without Ohio; (II) that the Act as thus applied is a constitutional exercise of state power, because the area of consumer frauds has not been preempted by Congress and because the Ohio Act does not overly burden interstate commerce.

I.

The court concludes that the Act is intended to prohibit (and to provide civil remedies to enforce the prohibition of) deceptive and unconscionable acts and practices by Ohio suppliers in connection with consumer transactions, irrespective of the location of the consumer, whether within or without Ohio. The intention of the legislature is not expressly set forth in the Act; it must be inferred.

The court's interpretation of the intent and meaning of the Act is illustrated by its title. "Consumer Sales Practices Act" suggests that what is sought to be regulated are the *practices* used in making or seeking to make sales to consumers, and not the terms of completed sales with consumers; in other words, the subject matter is the *practices* used by the supplier, and not completed sales. The title of the Act may be used to aid the court's interpretation. 50 Ohio Jurisprudence 2d 243, Statutes, Section 259 *et seq.*

The heart of the Act is set forth in two Revised Code Sections. The first deals with deceptiveness. Division (A) of R. C. 1345.02 reads in full as follows:

"No supplier shall commit a deceptive act or practice in connection with a consumer transaction. Such deception act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

It is significant that the Legislature did *not* use such phraseology as: "No consumer transaction shall be accomplished by means of a deceptive act or practice by a supplier." Division (B) of R. C. 1345.02 illustrates what is meant by "deceptive", as follows:

"Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

"(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits it does not have;

"(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

"(3) That the subject of a consumer transaction is new, or unused, if it is not;

"(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;

"(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;

"(6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;

"(7) That replacement or repair is needed, if it is not;

"(8) That a specific price advantage exists, if it does not;

"(9) That the supplier has a sponsorship, approval, or affiliation he does not have;

"(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

The second Revised Code section deals with unconscionable practices. Division (A) of R. C. 1345.03 reads in full as follows:

"No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

Again, the phrases used by the legislature indicate the desire to regulate and control suppliers, and not just completed transactions. Division (B) of R. C. 1345.03 proceeds to illustrate what is to be considered in deciding what is "unconscionable," as follows:

"In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

"(1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interest because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;

"(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;

"(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

"(4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;

"(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially onesided in favor of the supplier;

"(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment."

It is significant that it is the activity of the supplier that is pivotal in making the determination of unconscionability, and not the character or nature of a completed transaction with a consumer, nor the actual mental state of the consumer.

The sanctions provided by the Act are designed to regulate deceptive and unconscionable practices. The Common Pleas Courts, Municipal Courts and County Courts are given jurisdiction "over any supplier with respect to any act or practice in this state" covered by the Act, or with respect to any consumer claim. R. C. 1345.04. The Director of Commerce is authorized and directed to obtain

and publicize information about acts and practices made illegal by the Act, to report annually to the Governor and the General Assembly; to hold public hearings, and to provide substantive rules defining prohibited acts. R. C. 1345.-05. The Attorney General is authorized to investigate illegal acts and practices, with power of subpoena. R. C. 1345.-06. Further, the Attorney General is authorized to bring actions to obtain declaratory judgments and injunctions, and also to bring class actions on behalf of consumers, under certain sets of conditions; the courts are authorized to appoint receivers, sequester assets, reimburse consumers, strike unconscionable clauses, and grant other appropriate relief. R. C. 1345.07. A consumer is granted a cause of action on his own behalf, where there has been a violation of the Act, to rescind the transaction or to recover his actual damages, or to seek a declaratory judgment. R. C. 1345.09.

There are no penal sections in the Act, such as those which provide for a fine or incarceration. R. C. 1345.13 is the concluding section, and provides as follows:

"The remedies in Sections 1345.01 to 1345.13 of the Revised Code, are in addition to remedies otherwise available for the same conduct under state or local law."

The court concludes that this is a "remedial law," not a penal law. As such it must receive liberal construction. R. C. 1.11 reads in full as follows:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws; but this section does not require a liberal construction of laws affecting personal liberty, relating to amercement, or of a penal nature."

The intent of the legislature is inferred from the wording used by the legislature. For instance, R. C. 1345.05 (A) (6) requires that the annual report of the Director of Commerce shall include "the acts or practices *occurring in this state* that violate" the Act. (Emphasis added.) Under R.

64

C. 1345.05(B)(2), the Director of Commerce may promulgate "substantive rules defining with reasonable specificity acts or practices which violate Sections 1345.02 and 1345.03 of the Revised Code." The Attorney General may send representatives to inspect matter material to any investigation of a violation of the Act which is located outside the state. R. C. 1345.06. The injunction which the Attorney General may obtain under R. C. 1345.07(A)(1) may enjoin "a supplier who is violating or *threatening to violate such sections.*" (Emphasis added.) The jurisdiction of the Ohio courts is "over any supplier" with respect to practices prohibited by the Act. R. C. 1345.04.

Defendants concede that they are Ohio "persons," that they carry on their operations in Ohio, that they send their materials to other states from Ohio, and that when a non-Ohio consumer responds to defendants' mailings, the next activity of defendants, if any, is made in Ohio. In other words, defendants concede the jurisdiction of Ohio, and, as previously noted, defendants concede that the Act controls consumer transactions made or sought to be made with Ohio consumers. But they contend that Ohio has no interest in what happens to non-Ohio consumers.

This argument will not stand up under scrutiny. If an Ohio consumer is in fact engaged in deceptive and unconscionable practices, can it reasonably be said that Ohio's interest in regulating such activity stops the moment this activity extends beyond the borders of the state? Does this somehow make the activity any the less deceptive and unconscionable? Can it be said that the state has absolutely no interest in what Ohio persons are doing by way of deceptive and unconscionable acts if the only persons affected are those beyond the borders of the state? This court thinks not.

There is an analogy in the Ohio Criminal Code. If a person knowingly obtains property of another by deception, with the purpose to deprive that other of his property, he is guilty of theft under R. C. 2913.02. If any element of this offense takes place in Ohio (such as the deceptive act), the state has jurisdiction under R. C. 2901.11. There

is a similar analogy in a case where a person stands in Ohio and shoots an Indiana person across the state border, killing him; Ohio has a distinct interest in the crime. Admittedly, the Ohio Consumer Sales Practices Act does not spell out the state's interest as clearly as the Ohio Criminal Code, but the analogy, and a discerning common sense, support the proposition that Ohio has an interest in illegal activities conducted within its borders, even though the damaged person may be located outside its borders.

In a highly complex and mobile society, the components of which are intertwined and interdependent, a state may validly prohibit acts within its borders where the damages resulting from those acts are much more clearly located in another state. *Palladio* v. *Diamond* (D. C. S. D. N. Y., 1970), 321 F. Supp. 630.

The court concludes that being remedial in nature, the Act is not controlled by that line of cases which hold that under the principles of the conflict of laws, a contract between persons must be interpreted under the laws of the state in which the contract was made or in which the final act takes place which completes the contract. Thus the following cases are not determinative of the issue in this matter: *Hartford Accident & Indemnity Co.* v. *Delta & Pine Land Co.* (1934), 292 U. S. 143; *Brocalsa Chemical Co.* v. *Langsenkamp* (C. A. 6, 1929), 32 F. 2d 725; *The Buckeye Pipe Line Co.* v. *Fee* (1900), 62 Ohio St. 543.

The defendants also claim that they are being sued in other states where the non-Ohio consumers are located. It does not overly concern this court that deceiving and unscrupulous persons may have to respond for their acts in two (or more) different states under two (or more) different laws.

Deceived persons have their individual remedies in all states against bilking suppliers. Therefore, the question might well be asked: How far will a state go to protect consumers from their own larcenous inclinations and vain follies? However, considering the cost of individual litigation and the difficulties an individual consumer has in obtaining a recovery against a bilking supplier located

(say) 2,000 miles away, this court does not believe that this legislation goes too far.

## II.

The court concludes that the Ohio Consumer Sales Practices Act does not extend beyond the constitutional limitations on local legislative power. These limitations were succinctly defined by Justice Potter Stewart in his majority opinion in *Huron Cement Co.* v. *Detroit* (1960), 362 U. S. 440, at 443:

"The basic limitations upon local legislative power in this area are clear enough. The controlling principles have been reiterated over the years in a host of this Court's decisions. Evenhanded local regulation to effectuate a legitimate local public interest is valid unless preempted by federal action * * *, or unduly burdensome on maritime activities or interstate commerce * * *.

"In determining whether state regulation has been preempted by federal action, 'the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State.' *Savage* v. *Jones,* 225 U. S. 501, 533 * * *.

"In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when 'conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.' *Sherlock* v. *Alling,* 93 U. S. 99, 103 * * *. But a state may not impose a burden which materially affects interstate commerce in an area where uniformity of regulation is necessary. * * *'" (Citations omitted, excepted those from which the opinion takes quoted material.)

Other definitive statements of this same distinction between national and local legislation will be found in *Hines* v. *Davidowitz* (1941), 312 U. S. 52, and *Southern Pacific Co.* v. *Arizona* (1945), 325 U. S. 761.

## II(A).

The court concludes that Congress has not enacted any legislation which pre-empts the field governing those consumer frauds which happen to employ the mails. In fact, the defendants concede that the Ohio Act controls deceptive and unconscionable practices directed at Ohio consumers, even through the use of the mail; and it is the same federal mail service which carries defendants' materials to non-Ohio consumers.

The principal federal legislation is Section 1341, Title 18, U. S. Code. It does *not* set forth that type of comprehensive, integrated, nationwide scheme for the control of all frauds which this court considers a pre-emption of the field. It has never been so interpreted. In fact, it has been interpreted as designed and intended to exist side by side. with state laws governing frauds. *United States* v. *Edwards* (C. A. 5, 1972), 458 F. 2d 875. The subject of consumer frauds is an entirely different matter than such things as the registration of aliens or the training and licensing of post office mail truck drivers, which have been held to be areas precluded by federal legislation. *Hines* v. *Davidowitz, supra; Johnson* v. *State of Maryland* (1920), 254 U. S. 51.

## II(B).

The court concludes that the Ohio Consumer Sales Practices Act does not impose an undue burden on interstate commerce. This is not a regulation of "clean" commerce, but a regulation of commerce which is infected with deceptive or unconscionable practices. The state has a clear and valid interest in promoting fair consumer practices and in regulating unfair consumer practices. It is not considered a burden that a deceptive and unscrupulous operator may have to answer civil suits in several jurisdictions, provided that any injured party can recover his damages only once (there is nothing in the Ohio Act which allows a double recovery). The Act does not create

68

that type of "unevenness" or lack of uniformity between federal and state regulations which would make the Ohio Act unduly burdensome. There is no prohibition against any U. S. citizen which would keep him from engaging in lawful commerce with his own property, as was attempted by the Indiana Legislature and prohibited by the Indiana Supreme Court in *Department of Financial Institutions* v. *General Finance Corp.* (1949), 227 Ind. 373, 86 N. E. 2d 444, 10 A. L. R. 2d 436. The regulation of deceptive and unconscionable practices is not similar to Arizona's attempted regulation of the length of freight trains. *Southern Pacific Co.* v. *Arizona, supra.* On the contrary, it is local regulation which does not violate the constitution; such as, a smoke abatement code applicable to vessels in interstate commerce (*Huron Cement Co.* v. *Detroit, supra*) and a New Mexico prohibition against certain advertising in local papers and over local radio when applied to a prospective advertiser located in Texas (*Head* v. *New Mexico Board of Examiners in Optometry* [1963], 374 U. S. 424).

*Motion to dismiss denied.*