CHESNUT, Appellant,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellee.

[Cite as *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App.3d 299, 2006-Ohio-2080.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84376.

Decided April 27, 2006.

300

Schiff & Dickson, L.L.C., Marvin H. Schiff, and Blake A. Dickson; Parry, Derring, Futscher & Sparks, P.S.C., David A. Futscher, Amy L. Hunt, and Ronald R. Parry, for appellant.

Baker & Hostettler, L.L.P., Ronald S. Okada, Wayne C. Dabb Jr., and Brett A. Wall, for appellee.

ANTHONY O. CALABRESE JR., Judge.

{¶ 1} Plaintiff Randall Chesnut appeals from the trial court's decision granting summary judgment to Progressive Casualty Insurance Company ("Progressive") on claims for violations of the Ohio Consumer Sales Practices Act and unjust enrichment. After reviewing the facts of the case and pertinent law, we affirm.

I

{¶ 2} On November 11, 2000, Chesnut, who is a Louisiana resident, purchased a used 2000 Saturn SL2 from Ray's Auto Sales ("Ray's") in Youngsville, Louisiana. In July 2000, Progressive, which insured the Saturn when it was driven by its original owner, declared the vehicle a total loss after estimating $9,921.36 to repair the vehicle after it was damaged in a fire. When Progressive sold the vehicle to Ray's at an auction, it determined that the cost of repairing the Saturn was less than 75 percent of the actual cash value ("ACV"), which was $14,350. Pursuant to Louisiana law, specifically La.R.S. 32:702, the Saturn could be sold with a clean title, rather than a salvage title. Ray's took title to the Saturn on September 26, 2000.

{¶ 3} Before Chesnut purchased the Saturn, he visited Ray's and saw the vehicle disassembled as it was being repaired. Ray's explained that the vehicle had suffered fire damage and was being rebuilt. Chesnut purchased the Saturn for $8,500, and the vehicle's odometer read 5,866 miles at the time. Since then, Chesnut has driven the Saturn approximately 50,000 miles. He has experienced no problems with the vehicle, with the exception of the vehicle's losing power one time. When he took it to a Saturn dealership, the technicians could not find any problem with the car, and Chesnut was not charged for the visit.

{¶ 4} On January 28, 2002, Chesnut filed suit against Progressive, alleging violations of the Ohio Consumer Sales Practices Act ("the CSPA") and unjust enrichment.[1] Both claims are based on Chesnut's allegation that Progressive violated the Louisiana vehicle titling statute by not obtaining a salvage title for the Saturn after it was declared a total loss.

{¶ 5} On February 23, 2004, the court granted summary judgment in favor of Progressive, finding the following: Progressive did not deceive Chesnut under the CSPA, Progressive acted lawfully under the Louisiana titling statute, Chesnut did not directly confer a benefit on Progressive, and Chesnut suffered no damages.

## II

{¶ 6} We initially note that all three of Chesnut's assignments of error relate to the court's granting summary judgment to Progressive and, therefore, appellate review is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact, (2) they are entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. See, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 7} In his first assignment of error, Chesnut argues that "the trial court erred in granting Progressive's motion for summary judgment because genuine issues of material fact exist as to whether Progressive acted lawfully under the applicable salvage title law." Specifically, appellant argues that an Ohio jury should have decided whether the Saturn sustained sufficient damage to require a salvage title under La.R.S. 32:702(11) and (12).

{¶ 8} La.R.S. 32:702 reads as follows:

"(11) The term 'salvage title' shall mean a certificate used to evidence the declaration in an insurance settlement that a motor vehicle is a 'total loss' motor vehicle as provided in this Chapter, to be prescribed and distributed by the office of motor vehicles, to an insurance company, its authorized agent, or the owner of a 'total loss' motor vehicle.

"(12) The term 'total loss' means a motor vehicle which has sustained damages equivalent to seventy-five percent or more of the market value as determined by the most current National Automobile Dealers Association Handbook."

---

1. Chesnut filed suit as representative of a class of "all persons who own automobiles previously acquired by Progressive * * * as a result of [Progressive's] decision that the vehicles were not reparable and were not given salvage titles * * *." The court rendered the request for a class action moot upon granting Progressive's summary judgment motion. The class certification is not part of the instant appeal.

{¶ 9} Chesnut argues that Progressive's initial repair estimate is not the only thing to be considered in determining the amount of damages the vehicle sustained when applying La.R.S. 32:702. For example, in the instant case, Progressive's repair estimate was $9,921.36 and the ACV of the Saturn was $14,350. Thus, the damage amounts to approximately 69 percent of the ACV, and the vehicle is not a total loss under Louisiana statute. However, within Progressive's internal file on the Saturn, a 40 percent supplement of $3,968.54 was used to decide whether the company should declare the vehicle a total loss. Chesnut argues that with the supplement, the "damage" was $13,889.90, which is approximately 97 percent of the ACV, and under the Louisiana statute, this clearly requires a salvage title. Chesnut claims that "[s]ince the supplemental estimate was used by Progressive to determine the total amount of repair costs, this same figure should have been used to determine whether or not a salvage title was required pursuant to Louisiana law."

{¶ 10} Progressive, on the other hand, first argues that statutory interpretation is a question of law for the court, not a question of fact for the jury. See *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St.3d 125, 127, 661 N.E.2d 1011. Additionally, Progressive argues that its estimate of record "is the most accurate means of determining a vehicle's actual cost of repair." The estimator's notes in the Saturn's claim file indicate that a repair supplement may be necessary if there is unseen damage in the engine compartment. Progressive argues that supplements are really "guesstimates" of possible additional damage and are used internally to make cost-effective decisions on whether to declare a particular vehicle a total loss. Progressive notes that Louisiana law is silent on whether supplements should be used in determining the damage a vehicle sustained and that Chesnut points to no legal authority to support his contention that the estimate of record was incomplete.

{¶ 11} A review of La.R.S. 32:702 and the relevant case law reveals nothing to support Chesnut's position that Progressive's initial estimate is not enough to determine damages under the statute. We conclude that an insurance company's internal policies and procedures for computing damage to a vehicle in deciding whether to declare it a total loss do not necessarily have to be the same policies and procedures for defining damages within a state's statute. The trial court's determination that Progressive was entitled to judgment as a matter of law on the issue of whether it violated La.R.S. 32:702 was proper. Accordingly, Chesnut's first assignment of error is overruled.

III

{¶ 12} In his second assignment of error, Chesnut argues that "the trial court erred in granting Progressive's motion for summary judgment because genuine

issues of material fact exist as to whether Progressive committed an unfair, deceptive or unconscionable act under the Ohio Consumer Sales Practices Act." Specifically, Chesnut alleges that Progressive committed a deceptive act, as defined by the CSPA, when it failed to obtain a salvage title for the Saturn. In this assignment of error, Chesnut makes four subarguments: (1) the CSPA applies to conduct outside Ohio, (2) Progressive is a "supplier" under the CSPA, (3) whether Progressive violated the CSPA was a question for the jury, and (4) he suffered damages as a result of Progressive's unfair and deceptive practices.

{¶ 13} When the court granted summary judgment, it did so based on Chesnut's third subargument, finding that "no issue of material fact has been created that would support a claim for unfair or deceptive activity on the part of Progressive" and that, as a matter of law, Progressive did not violate the CSPA. However, both Chesnut and Progressive address the remaining issues in their appellate briefs; thus, we will review all four issues before us.

{¶ 14} The CSPA "sets forth standards of conduct for suppliers of consumer goods and makes certain deceptive practices actionable." *Davis v. Axelrod Chrysler Plymouth, Inc.*, Cuyahoga App. No. 81765, 2003-Ohio-438, 2003 WL 194888. R.C. 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

### Conduct outside Ohio

{¶ 15} R.C. 1345.04 determines the reach of the CSPA, and it states that the act covers "any supplier with respect to any act or practice in this state * * *." Courts have interpreted this to mean that "the statute is only applicable if the offending conduct took place within the territorial borders of the state of Ohio." *Shorter v. Champion Home Builders Co.* (N.D.Ohio 1991), 776 F.Supp. 333, 339. See, also, *Brown v. Market Dev., Inc.* (1974), 41 Ohio Misc. 57, 68 O.O.2d 276, 322 N.E.2d 367; *Brown v. Liberty Clubs* (1989), 45 Ohio St.3d 191, 543 N.E.2d 783.

{¶ 16} Chesnut argues that because Progressive is headquartered in Ohio, the policies and procedures for handling total-loss and salvage claims emanate from Ohio. It is undisputed that the damage to the Saturn happened in Louisiana, the claim was adjusted in Louisiana, the vehicle was repaired and sold in Louisiana, and the clean title that is the subject of this appeal is a Louisiana title. According to Chesnut, however, the guidelines for titling the vehicle come from Progressive's headquarters in Ohio, and, therefore, the act must have occurred in Ohio.

{¶ 17} Progressive points out that Chesnut did not allege a violation of the Ohio vehicle titling statute, R.C. 4505.19, because the vehicle was not titled in Ohio, and this is a good indication that the conduct forming the basis for the instant case did not take place in Ohio. Progressive further argues that it did not direct and control Louisiana vehicle titling from its Ohio headquarters. Rather, salvage determinations are made "on a case by case basis in the state where the vehicle at issue was declared a total loss."

{¶ 18} A recent case handed down by the Illinois Supreme Court is so factually and legally similar to the instant case, it is worth noting. In *Gridley v. State Farm Mut. Auto. Ins. Co.* (2005), 217 Ill.2d 158, 298 Ill.Dec. 499, 840 N.E.2d 269, the plaintiff filed a class action complaint in an Illinois state court against State Farm Mutual Automobile Insurance Company, alleging unjust enrichment and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act in connection with State Farm's sale of salvage vehicles.[2] The court dismissed the case against State Farm, and held:

> State Farm handles compliance with salvage laws on a state-by-state basis, rather than from State Farm's headquarters in Bloomington, Illinois, given the variation in each state's salvage laws. * * * Gridley is a resident of Louisiana. Gridley purchased his car in Louisiana and obtained automobile insurance in Louisiana. Gridley was involved in an accident in Louisiana and took his car to a repair center in Louisiana. State Farm's alleged deception—fraudulently obtaining a clean title rather than a salvage title on the vehicle sold to Gridley—occurred in Louisiana. * * * The majority of circumstances relating to the sale of the salvage vehicle in this case occurred primarily and substantially in Louisiana, so that Gridley does not have a cognizable cause of action under the Illinois Consumer Fraud Act.

{¶ 19} We agree with the analysis of the Illinois Supreme Court and hold that Chesnut cannot file suit under the CSPA for deceptive acts in titling a vehicle in Louisiana.

### Supplier under the CSPA

{¶ 20} R.C. 1345.01(C) defines "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(A) defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily

---

2. It is interesting to note that the Belleville, Illinois plaintiffs' attorneys in *Gridley* are among the same attorneys who filed the case on behalf of Chesnut in the Cuyahoga County Court of Common Pleas.

personal, family, or household, or solicitation to supply any of these things." Subsection (A) goes on to state that a consumer transaction does not include a transaction between an insurance company and its customers. Furthermore, Ohio courts have held that the CSPA does not apply to insurance companies conducting insurance transactions. See, e.g., *Johnson v. Lincoln Natl. Life Ins. Co.* (1990), 69 Ohio App.3d 249, 590 N.E.2d 761 (holding that "[i]t is clear the Ohio Legislature meant to regulate the insurance industry in R.C. Title 39 and that the Ohio Consumer Sales Practices Act has no application to controversies over insurance policies"); *Drozeck v. Lawyers Title Ins. Corp.* (2000), 140 Ohio App.3d 816, 749 N.E.2d 775.

{¶ 21} In the instant case, Progressive obtained a title for a vehicle it declared a total loss before selling it at an auto auction. This was clearly done in Progressive's capacity as an insurance company and is not subject to the CSPA.

### Deceptive act

{¶ 22} Chesnut argues that Progressive violated the CSPA in two ways. First, violating the Louisiana titling statute violates R.C. 1345.02(B)(1) per se. R.C. 1345.02(B)(1) states that an act is deceptive if it represents that it has approval that it does not actually have. However, we have concluded that Progressive did not violate Louisiana titling laws, so this argument fails. Second, representing that the vehicle was not damaged to the extent that it was declared a total loss violates R.C. 1345.02(B)(2), which states that it is deceptive to represent that a thing is of a certain standard or quality when it actually is not.

{¶ 23} When determining whether an act or practice is deceptive, courts look at the incident from the consumer's standpoint. "The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract." *Mannix v. DCB Serv., Inc.*, Montgomery App. No. 19910, 2004-Ohio-6672, 2004 WL 2848921. Furthermore, a deceptive act "has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts." *McCullough v. Spitzer Motor Ctr.* (Jan. 27, 1994), Cuyahoga App. No. 64465, 1994 WL 24281.

{¶ 24} In the instant case, Progressive titled a vehicle in accordance with the titling laws of the applicable state. As a result, the Saturn had a "clean" title, although it had previously been declared a total loss and was repaired before Chesnut purchased it. However, Chesnut was fully aware of the situation, as Ray's informed him that the Saturn had been damaged in a fire, and he observed the vehicle as it was being repaired. He also spent $8,500 on a car with approximately 6,000 miles on it, when the ACV was over $14,000. As Progressive stated in its brief, "this is not a case where an unsuspecting consumer purchased a vehicle with no knowledge of its prior history and was deceived because the

vehicle's title failed to reveal that it had been damaged. Plaintiff here knew full well that the vehicle had sustained fire damage and was able to purchase the vehicle for a fraction of its retail value."

{¶ 25} We conclude that Progressive did not commit a deceptive or unfair act as contemplated by the CSPA.

### Damages

{¶ 26} Finally, Chesnut argues that he did sustain a loss caused by Progressive's deception. It must be noted that Chesnut has not incurred an actual loss, as at the time the parties submitted their briefs, he was still driving the Saturn. However, Chesnut claims that the proper measure of damages in his case is the difference between the vehicle's value as it was represented to be and the actual value of the vehicle at the time of the purchase. Chesnut does not explain his measure of damages by inserting dollar amounts into his formula; therefore, we must speculate as to what exactly he means. As we see it, the represented value and the actual value were the same: $8,500 for a used vehicle that was repaired after sustaining fire damage. At no time did Progressive represent the vehicle to be anything else.

{¶ 27} In summary of Chesnut's second assignment of error, he fails to establish that Progressive's acts were subject to the CSPA, let alone that they violated the statute. Additionally, Chesnut fails to establish that he suffered any damages at the hands of Progressive. His second assignment of error is overruled.

### IV

{¶ 28} In his third and final assignment of error, Chesnut argues that "the trial court erred in granting Progressive's motion for summary judgment because there is no requirement that appellant must directly confer a benefit on Progressive to assert a claim for unjust enrichment." Specifically, Chesnut argues that although he bought the Saturn from Ray's, he conferred a benefit on Progressive because it sold the vehicle to Ray's with a "clean" title, making approximately $1,200 more than if it had sold the vehicle with a salvage title.

{¶ 29} The Ohio Supreme Court has held that "unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923. To establish unjust enrichment, a plaintiff must show the following: (1) a benefit conferred upon defendant by plaintiff, (2) knowledge by defendant of the benefit, and (3) the acceptance or retention by defendant of the benefit under circumstances that make it inequitable for defendant to retain

the benefit without payment of its value. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298.

{¶ 30} Although the parties focus on whether the benefit was directly conferred, we find that this assignment of error can be disposed of by addressing the third prong of the unjust-enrichment test. In other words, for this claim to succeed, not only must there be an enrichment, but that enrichment must be unjust. "[E]nrichment alone will not suffice to invoke the remedial powers of a court of equity. Because [the plaintiff] is seeking the equitable remedies available under a claim of unjust enrichment, it must show a superior equity so that it would be unconscionable for [the defendant] to retain the benefit." *Directory Servs. Group v. Staff Builders Internatl.* (July 12, 2001), Cuyahoga App. No. 78611, 2001 WL 792715.

{¶ 31} In the instant case, it was not inequitable for Progressive to retain the profit from selling the Saturn to Ray's, because Progressive titled the vehicle in accordance with Louisiana titling laws. Accordingly, Chesnut's third assignment of error is without merit and is overruled.

Judgment affirmed.

SWEENEY, P.J., concurs.

GALLAGHER, J., concurs in part and dissents in part.

SEAN C. GALLAGHER, Judge, concurring in part and dissenting in part.

{¶ 32} I concur with the majority's determination that Chesnut does not have a valid Ohio CSPA claim. However, I respectfully disagree with some of the majority's analysis and conclusions regarding the CSPA claim. I also dissent from the majority's decision to affirm the grant of summary judgment on the unjust-enrichment claim.

{¶ 33} I agree that Chesnut does not have a valid claim under Ohio's CSPA because salvage determinations are made on a case-by-case basis, compliance with Louisiana salvage laws are at issue, and "the majority of circumstances relating to the sale of the salvage vehicle in this case occurred primarily and substantially in Louisiana." See *Gridley v. State Farm Mut. Auto. Ins. Co.* (2005), 217 Ill.2d 158, 298 Ill.Dec. 499, 840 N.E.2d 269, 275. Therefore, I believe that the majority correctly affirms the grant of summary judgment on this claim.

{¶ 34} Nevertheless, I do not agree with the majority's conclusion that the CSPA would not apply because an insurance transaction was involved. It is true that the CSPA does not apply to controversies over insurance policies and transactions. See *Johnson,* 69 Ohio App.3d 249, 590 N.E.2d 761. Instead, R.C. Title 39 regulates the insurance industry with respect to matters involving the

business of insurance. This is not to say any matter involving an insurance company cannot be subject to the CSPA. As found in a similar salvage-title case, because the activity of buying and reselling cars is not an inherent part of the business of insurance, this practice is subject to the CSPA. *Conatzer v. Am. Mercury Ins. Co., Inc.* (Okla.Civ.App.2000), 15 P.3d 1252, 1255. Indeed, "there is clear authority that acts nearly identical to those alleged to have been committed * * * do provide a basis for a fraud-based consumer protection claim." Id.; *O'Brien v. B.L.C. Ins. Co.* (Mo.1989), 768 S.W.2d 64. Therefore, had this action involved a vehicle titled in Ohio, then an argument could be made for application of Ohio's CSPA.[1]

{¶ 35} I also disagree with the majority's conclusion that Progressive did not violate Louisiana titling laws. I believe that a question of fact has been presented as to whether the vehicle was a "total loss" under Louisiana's salvage title laws. Under La.R.S. 32:702, a "total loss" is defined as a vehicle that has "sustained damages equivalent to seventy-five percent or more of the market value as determined by the most current National Automobile Dealers Association Handbook ['NADA Handbook']." In *Clark v. McNabb* (La.App.2004), 878 So.2d 677, 681, the Louisiana court indicated that the valuation method used by the trial court is a question of fact. The court further stated that in valuing a vehicle, a trial court is not limited to the NADA Handbook and may value the vehicle based upon its own assessment of the evidence presented. Id. Similarly, the value of the damages sustained by the vehicle is a question of fact to be determined upon the evidence presented.

{¶ 36} In this case, there is a clear disparity as to the value to repair the vehicle. Progressive refers to the initial $9,921.36 estimate to repair the vehicle, which amounted to approximately 69 percent of the actual cash value. Based on this estimate, Chesnut alleges, Progressive obtained a clean title. However, this estimate did not include a supplement of $3,968.54 that was allegedly used by Progressive to declare the vehicle a total loss for purposes of paying its insured a cash value for the vehicle and subsequently selling it to an auto rebuilding company with a clean title. There is also the question of the actual cost to repair the vehicle. Since an issue of fact exists as to whether the vehicle was a "total loss" for which a salvage title should have been obtained, summary judgment would not be appropriate on this issue. Nevertheless, as stated above, I do not believe that Ohio's CSPA applies to this action because the conduct occurred outside Ohio, and, therefore, I would affirm the grant of summary judgment on the CSPA claim.

---

1. It appears from the record that the claim should have been made under Louisiana's CSPA.

{¶ 37} With respect to the unjust-enrichment claim, I disagree with the majority's conclusion that this claim must fail because the vehicle was titled in accordance with Louisiana law. Again, I do not believe that this court can decide the issue of fact involving the cost of repair and whether the vehicle was a "total loss." As was the case in *Gridley*, 217 Ill.2d 158, 298 Ill.Dec. 499, 840 N.E.2d 269, I believe that this cause should have been dismissed on grounds of forum non conveniens in favor of a Louisiana forum.