*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DANIEL PILGRIM and PATRICK KIRLIN,
　　　　　　　　*Plaintiffs-Appellants,*

　　*v.*

UNIVERSAL HEALTH CARD, LLC and
COVERDELL & COMPANY, INC.,
　　　　　　　　*Defendants-Appellees.*

Nos. 10-3211/3475

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 09-00879—John R. Adams, District Judge.

Argued:  October 6, 2011

Decided and Filed:  November 10, 2011

Before:  KEITH, SUTTON and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Peter N. Freiberg, MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C., White Plains, New York, for Appellants.  Robert N. Rapp, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, Gary A. Corroto, TZANGAS, PLAKAS, MANNOS & RAIES, LTD., Canton, Ohio, for Appellees.  **ON BRIEF:** Peter N. Freiberg, MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C., White Plains, New York, for Appellants.  Robert N. Rapp, Matthew J. Kucharson, Eric S. Zell, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, Gary A. Corroto, Lee E. Plakas, Edmond J. Mack, TZANGAS, PLAKAS, MANNOS & RAIES, LTD., Canton, Ohio, for Appellees.

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.  Hoping to represent a nationwide class of consumers, Daniel Pilgrim and Patrick Kirlin sued two companies responsible for creating and marketing a healthcare discount program, alleging that the companies had used deceptive advertising to sell their product.  The consumer-protection laws of many States, not just of Ohio, govern these claims and factual variations among the claims abound, making a class action in this setting neither efficient nor workable nor above all consistent with the requirements of Rule 23 of the Federal Rules of Civil Procedure.  We affirm.

I.

In 2007, Universal Health Card and Coverdell & Company created a program designed to provide healthcare discounts to consumers.  Membership in the program gave consumers access to a network of healthcare providers that had agreed to lower their prices for members.  Universal placed ads in newspapers around the country encouraging customers to visit its website or call its toll-free hotline to learn more about the program and to sign up for a membership.  Coverdell was responsible for maintaining the network of healthcare providers and for reviewing Universal's advertising materials.

Some people did not like the program.  They discovered healthcare providers listed in the discount network that had never heard of the program, and complained that the newspaper advertisements, designed to look like news stories and dubbed "advertorials," were deceptive.

Two disenchanted consumers, Pilgrim and Kirlin, sued Universal and Coverdell in federal court, seeking to represent a nationwide class of all people who had joined the program.  The opt-out class encompassed 30,850 people.  The district court exercised jurisdiction under a provision of CAFA, the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), which grants jurisdiction over class actions in which the amount

in controversy exceeds $5 million and the parties are minimally diverse. The plaintiffs complained that the defendants advertised the program as "free" when it included a non-refundable registration fee and a monthly membership fee after the first thirty days. Even then, the program was worthless, they added, because the advertised providers in their area did not offer the featured discounts. Based on these and other allegedly deceptive practices, the plaintiffs claimed that the companies had violated the Ohio Consumer Sales Practices Act as well as Ohio's common law prohibition against unjust enrichment.

Coverdell filed a motion to dismiss the complaint under Rule 12(b)(6), which the district court granted. It reasoned that Universal, not Coverdell, peddled and sold the memberships, making Coverdell too far removed from the transactions to qualify as a "supplier" under Ohio law or to have to answer to an unjust-enrichment claim under Ohio law.

Of more pertinence to this appeal, Universal filed a motion to strike the class allegations, which the district court also granted. It reasoned that, under Ohio's choice-of-law rules, it would have to analyze each class member's claim under the law of his or her home State. "Such a task," the district court concluded, "would make this case unmanageable as a class action" and would dwarf any common issues of fact implicated by the lawsuit. Reasoning that the claims of the named plaintiffs did not exceed $75,000, the district court dismissed the lawsuit without prejudice for lack of subject matter jurisdiction.

II.

Rule 23 of the Federal Rules of Civil Procedure governs class actions in federal court. To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b). A failure on either front dooms the class. A district court's class-certification decision calls for an exercise of judgment; its use of the proper legal framework does not. So long as the district court applies the correct framework, we review its decision for an abuse of discretion.

In this instance, the district court opted to focus on a failure to meet the predominance requirement under Rule 23(b), more particularly under Rule 23(b)(3), the only conceivable vehicle for this claim. To demonstrate predominance, parties seeking class recognition must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The plaintiffs could not do that here, the district court held, because each class member's claim would be governed by the law of the State in which he made the challenged purchase, and the differences between the consumer-protection laws of the many affected States would cast a long shadow over any common issues of fact plaintiffs might establish. That judgment is sound and far from an abuse of discretion for three basic reasons.

Reason one: different laws would govern the class members' claims. As the parties agree (quite properly, we might add), Ohio's choice-of-law rules determine which consumer-protection laws cover these claims. *See Muncie Power Prod., Inc. v. United Techs. Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Under those rules, "the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). In determining the State with the most significant relationship, Ohio courts consider: (1) "the place of the injury"; (2) the location "where the conduct causing the injury" took place; (3) "the domicile, residence, . . . place of incorporation, and place of business of the parties"; (4) "the place where the relationship between the parties . . . is located"; and (5) any of the factors listed in Section 6 of the Restatement (Second) of Conflict of Laws "which the court may deem relevant to the litigation." *Id.* The Section 6 factors include: "the relevant policies of the [State in which the suit is heard]," "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," "the basic policies underlying the particular field of law," "certainty, predictability and uniformity of result" and "ease in the determination and application of law to be applied." *Id.* at 289 n.6 (internal quotation omitted).

Gauged by these factors, the consumer-protection laws of the potential class members' home States will govern their claims. As with any claim arising from an interstate transaction, the location-based factors point in opposite directions: injury in one State, injury-causing conduct in another; residence in one State, principal place of business in another. Yet the other factors point firmly in the direction of applying the consumer-protection laws of the States where the protected consumers lived and where the injury occurred. No doubt, States have an independent interest in preventing deceptive or fraudulent practices by companies operating within their borders. But the State with the strongest interest in regulating such conduct is the State where the consumers—the residents protected by *its consumer*-protection laws—are harmed by it. That is especially true when the plaintiffs complain about the conduct of companies located in separate States (Universal in Ohio; Coverdell in Georgia), diluting the interest of any one State in regulating the source of the harm yet in no way minimizing the interest of each consumer's State in regulating the harm that occurred to its residents.

To conclude otherwise would frustrate the "basic policies underlying" consumer-protection laws. *Morgan*, 474 N.E.2d at 289 n.6. It would permit companies to "evade [local] consumer protection laws by locating themselves just across the [border] from the . . . citizens they seek as customers." *Williams v. First Gov't Mortg. & Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999) (internal quotation marks omitted). And it would permit nationwide companies to choose the consumer-protection law they like best by locating in a State that demands the least. Does anyone think that, if State A opted to attract telemarketing companies to its borders by diluting or for that matter eliminating any regulation of them, the policy makers of State B would be comfortable with the application of the "consumer-protection" laws of State A to their residents—the denizens of State B? Highly doubtful: the idea that "one state's law would apply to claims by consumers throughout the country—not just those in Indiana, but also those in California, New Jersey, and Mississippi—is a novelty." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002); *see also id.* at 1018 ("We do not for a second suppose that Indiana would apply Michigan law to an auto sale if Michigan permitted auto companies to conceal defects from customers; nor do we think it likely that Indiana

would apply Korean law (no matter *what* Korean law on the subject may provide) to claims of deceit in the sale of Hyundai automobiles, in Indiana, to residents of Indiana . . . ."). Indeed, it is not even clear whether, under a proper interpretation of the Ohio Consumer Sales Practices Act, that law would apply to extraterritorial injuries. *See Chesnut v. Progressive Cas. Ins. Co.*, 850 N.E.2d 751, 756 (Ohio Ct. App. 2006). Under *Morgan*, the place of the injury controls in a consumer-protection lawsuit, requiring application of the home-state law of each potential class member.

Working to overcome this conclusion, plaintiffs offer up a pair of Ohio common pleas court decisions that applied the Ohio Consumer Sales Practices Act to out-of-state sales by Ohio suppliers. *See Parker v. Berkley Premium Nutraceuticals, Inc.*, 2005 Ohio Misc. LEXIS 605 (Montgomery County 2005); *Brown v. Market Dev., Inc.*, 322 N.E.2d 367 (Hamilton County 1974). Yet one case (*Brown*) was decided before the Ohio Supreme Court's decision in *Morgan* and understandably makes no mention of it. The other (*Parker*) was decided after *Morgan*, and less understandably makes no mention of it, and, worse, treats *Brown* as a decision by the Ohio Supreme Court. *See Parker*, 2005 Ohio Misc. LEXIS 605, at *44. These decisions shed no light on the proper application of *Morgan*—a decision of the Ohio Supreme Court—to this case.

In the final analysis, *Morgan*'s choice-of-law rules make clear that the consumer-protection laws of the State where each injury took place would govern these claims. In view of this reality and in view of plaintiffs' appropriate concession that the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving this dispute.

Reason two: any potential common issues of fact cannot overcome this problem. Even if a nationwide class covering claims governed by the laws of the various States could overcome this problem by demonstrating considerable factual overlap, a point we need not decide, this is not such a case. The defendants' program did not operate the same way in every State and the plaintiffs suffered distinct injuries as a result. A core part of the claim is that the program was worthless because the listed healthcare providers near the plaintiffs did not offer the promised discounts or because there were

no listed providers near them in the first place. But to establish the point, the plaintiffs would need to make particularized showings in different parts of the country, particularly since the program apparently satisfied some consumers, as confirmed by the unchallenged reality that fifteen percent of those who signed up remained enrolled months after the suit was filed. Where and when featured providers offered discounts is a prototypical factual issue that will vary from place to place and from region to region. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 2552 (2011).

On top of that, the advertisements varied to account for the different requirements of each State's consumer-protection laws, a point plaintiffs acknowledge but cannot overcome. "Other than variations to ensure compliance with consumer regulations of the different states," they say, "the advertisements that were published [in various local newspapers] were substantially the same." Plaintiffs' Br. at 12. The key words are "[o]ther than" and "substantially," and these qualifications show that the plaintiffs' claims are not even linked by a common advertisement. Variations designed to account for differences in the applicable laws not only might suggest that the defendants *were trying* to comply in different ways with their legal obligations in each State, but they also confirm the varied nature of the claims, injuries and defenses. Even if, as the plaintiffs claim, callers heard identical sales pitches, Internet visitors saw the same website and purchasers received the same fulfillment kit, these similarities establish only that there is *some* factual overlap, not a predominant factual overlap among the claims and surely not one sufficient to overcome the key defect that the claims must be resolved under different legal standards.

Reason three: this conclusion is consistent with decisions of this court and several others. In a case involving negligence claims against a prosthetics manufacturer, we refused to allow a nationwide class covered by the laws of different States. "If more than a few of the laws of the fifty states differ," we explained, "the district judge would face an impossible task of instructing a jury on the relevant law." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1995). So too here. Other circuits have come to similar conclusions. The Seventh Circuit reversed a district court's certification of a

nationwide class in a contract and consumer fraud suit involving allegedly defective tires, holding that such a class is rarely, if ever, appropriate where each plaintiff's claim will be governed by the law of his own State. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015, 1018 (7th Cir. 2002). "Because these claims must be adjudicated under the law of so many jurisdictions," the Court reasoned, "a single nationwide class is not manageable." *Id.* at 1018. Likewise, in a negligence, products liability and medical monitoring lawsuit stemming from allegedly faulty pacemakers, the Ninth Circuit held that variations in state law greatly compounded the factual differences between claims, overwhelming any common issues related to causation and making national class resolution impractical. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189–90 (9th Cir. 2001); *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Differences of [state law] cut strongly against nationwide classes . . . ."); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially." (citation omitted)), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). In each of these cases, there were many common issues of fact, but none of that dissuaded the courts from refusing to certify class claims that would be measured by the legal requirements of different state laws.

The plaintiffs' other objection to the district court's class-action ruling goes to the timing, not the substance, of it. Given more time and more discovery, they say, they would have been able to poke holes in the court's class-certification analysis. We think not.

That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature. Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time" in the litigation, and nothing in the rules says that the court must

await a motion by the plaintiffs. As a result, "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)." 7AA Charles Allen Wright et al., *Federal Practice and Procedure* § 1785; *see also, e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941–44 (9th Cir. 2009); *Cook County College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 884–85 (7th Cir. 1972).

To say that a defendant may freely move for resolution of the class-certification question whenever it wishes does not free the district court from the duty of engaging in a "rigorous analysis" of the question, and "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 160 (1982). The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.

That leaves one final point. After the district court granted the motion to strike the class allegations, it dismissed the action without prejudice for lack of jurisdiction. The jurisdictional determination is mistaken. *See Metz v. Unizan Bank*, 649 F.3d 492, 500 (6th Cir. 2011); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers' Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009). This flaw, however, need not detain us or the parties. Even though parties may not establish subject matter jurisdiction in the federal courts by consenting to it, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998), that does not mean they must *remain* in federal court even when they cannot do so on their own terms. The federal courts closely guard the entrance to jurisdiction but not the exit. If the plaintiffs do not wish to continue pursuing

relief in this court and in this context, nothing about Article III requires them to do so. That is what happened here:  the plaintiffs declined to appeal the district court's holding that it lacked jurisdiction once it struck the class allegations, and the parties agreed at oral argument that an affirmance of the class issue as to Universal would apply with equal force to Coverdell.

III.

For these reasons, we affirm the district court's judgment striking the class allegations and dismissing this lawsuit without prejudice against both defendants.