STATE of Iowa ex rel. Thomas J. MILLER, Attorney General of Iowa, Appellee,

v.

NEW WOMYN, INC. and Dan Kaiser, Appellants.

No. 02–1049.

Supreme Court of Iowa.

May 12, 2004.

Timothy S. Eckley of Duncan, Green, Brown, Langeness & Eckley, A P.C., Des Moines, and Jay R. Hamilton, Le Claire, for appellants.

Thomas J. Miller, Attorney General, and Steve St. Clair, Assistant Attorney General, for appellee.

LARSON, Justice.

The State of Iowa, through its attorney general, brought an action under our Consumer Fraud Statute, Iowa Code § 714.16 (1999), against New Womyn, Inc. and its president, Dan Kaiser, based on the defendants' promotion and sale of a breast-enlargement device called a "Stimulation VII." Acting on a complaint filed by a New Womyn customer, the attorney general unsuccessfully sought information from the defendants about their product. The attorney general ultimately applied for, and the court granted, a default against the defendants for their failure to comply with discovery requests and related court orders. The court entered a judgment against the defendants for restitution, civil penalty, and related costs. We affirm.

## I. *Prior Proceedings.*

New Womyn's claims for its Stimulation VII were: it would permanently enlarge breast tissue, result in breast enlargement of two to four cup sizes, and would even regrow breasts that had been removed by mastectomy. New Womyn claimed the device had been proven to be safe and effective.

On September 21, 1999, the attorney general directed a Civil Investigative Demand (CID), under Iowa Code section 714.16(3)(*a*), to the defendants requesting information about the company and its customers. The defendants did not comply, and on January 11, 2000, the attorney general filed a petition under the Consumer Fraud Act. The petition asserted that the defendants had committed consumer fraud and requested an injunction pending

the defendants' compliance with the pending CID.

On March 8, 2001, the district court ordered the defendants to produce customer information, including names, dates of purchase, and amounts of the customers' payments. As of September 11, 2001, the defendants still had not complied with the request for information, and the court set a hearing for October 26 on the attorney general's motion to compel discovery. On October 26, 2001, the court ordered the defendants to produce the customer information and to make any experts they intended to use available for deposition. The defendants tentatively identified expert witnesses but failed to provide background information on them within the time required by the court. They did not provide any customer information.

On November 13, 2001, the attorney general filed a motion for default "and/or to exclude evidence." As of that time, the defendants had not complied with the court's orders of March 8, 2001, and October 26, 2001, to produce the customer information. As of November 19, 2001, the date set for trial, the defendants still had not produced the information.

On the date set for trial, defendant Kaiser did not appear—either on his own behalf or on behalf of the corporation. The court asked the defendants' attorney, Jay Hamilton, how the defendants wanted to proceed. Hamilton responded that the defendants did not resist the attorney general's motion for default because he was not prepared to go to trial that day. The attorney general presented testimony of its witnesses to provide a basis for the court's ultimate ruling.

## II. Resolution of the Issues.

■ A. *Denial of the continuance.* On October 31, 2001, over a year and a half after the attorney general's petition was filed, and only nineteen days before the trial date of November 19, the defendants moved for a continuance of the trial. The court denied the continuance, and the defendants raise this as an issue on appeal. The attorney general responds that (1) any argument regarding the continuance motion was waived by the defendants' stipulation to a default; and (2) in any event, such rulings are discretionary with the trial court.

■ Under Iowa Rule of Civil Procedure 1.911(1), a continuance may be granted "for any cause not growing out of the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained." Rulings on continuance motions are left to the discretion of the district court and are presumed to be correct. A party challenging such a ruling carries a heavy burden. *Rattenborg v. Montgomery Elev. Co.*, 438 N.W.2d 602, 605 (Iowa Ct.App.1989).

In this case, the court was justified in denying the continuance because the defendants had already slowed the progress of the case by disregarding the court's scheduling order and by failing to comply with the court's orders of March 8 and October 26, 2001, regarding discovery. The court also rejected the defendants' argument that they needed a continuance to allow a new attorney to prepare for trial because the defendants had been dilatory in attempting to find new counsel. We agree with this conclusion as well.

We conclude the district court did not abuse its discretion in denying the motion for continuance.

■ B. *The federal preemption claim.* The defendants' second issue raises a claim of federal preemption under the Medical Device Amendment (MDA) to the Federal Food, Drug, and Cosmetic Act. The defendants raised this issue in a mo-

tion for summary judgment, which was denied. They now raise the court's denial of their summary-judgment motion in this appeal. The federal statute on which the defendants rely provides:

**State and local requirements respecting devices**

(a) General rule

Except as provided in subsection (b) of this section [not applicable here], no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k.

In a case under the MDA, raising a similar preemption issue, the Supreme Court noted:

[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt State-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated ... in a field which the States have traditionally occupied," we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715 (1996) (quoting *Rice v. Santa Fe Elev. Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947)). In this case, the defendants' claim of preemption faces the "assumption" under *Medtronic*

that preemption was not intended. *Id.* The Court in *Medtronic* stated that its interpretation of the preemption statute was "substantially informed" by the federal regulations under the statute. In turn, the Code of Federal Regulations states that preemption is not intended as to

[s]tate or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices ... *or to unfair trade practices in which the requirements are not limited to devices.*

21 C.F.R. 808.1(*d*)(1) (emphasis added).

We conclude the defendants have failed to rebut the presumption that Iowa's Consumer Fraud Act is not preempted by the federal act.

▇▇ C. *Application of the statute.* Actions by the attorney general under the Consumer Fraud Act are in equity, Iowa Code § 714.16(7), so our review is de novo. The burden of proof with regard to truthful advertising is on the person making the claim. Under the Consumer Fraud Act,

[i]t is deceptive advertising within the meaning of this section for a person to represent in connection with the lease, sale, or advertisement of any merchandise that the advertised merchandise has certain performance characteristics, accessories, uses, or benefits or that certain services are performed on behalf of clients or customers of that person if, at the time of the representation, no reasonable basis for the claim existed. *The burden is on the person making the representation to demonstrate that a reasonable basis for the claim existed.*

Iowa Code § 714.16(2)(*a*) (emphasis added).

The defendants presented no credible expert evidence that the device was adequately tested or that reliable evidence would substantiate the claims made for it.

Kaiser was asked in a deposition about the research design for the testing he claims were done. His response was "what is that"? Kaiser showed no medical or scientific input into the design for the tests, which were done largely on himself and his wife. Kaiser was asked what qualifications he possessed to design the breast device, and he replied "I breathe, I live." When asked how he determined the proper function of the device, he said "my eyes" and "common sense."

While the defendants showed several pictures of women's breasts, claimed by the defendants to have been enlarged by the device, many of the women, including one who allegedly regained breast tissue after a mastectomy, had never even used the device. A Federal Food and Drug Administration employee with extensive experience in the review of applications regarding new medical devices testified that scientists would not accept the defendants' substantiation of their claims. In fact, he testified that a breast pump similar to the Stimulation VII was on display in the public lobby of the FDA building in a collection of what the FDA labeled "quack devices."

We conclude on our de novo review that the defendants have failed to show a reasonable basis for their claims and therefore affirm the district court on this issue.

■ D. *Scope of restitution order.* The district court did not limit its restitution order to Iowa residents, and the defendants claim this was error. The consumer fraud statute is not limited to residents of Iowa; in fact, it suggests the contrary. It provides that in a consumer-fraud action the court "may make orders or judgments as necessary ... to restore to any person in interest" the money they have lost. Iowa Code § 714.16(7). The statute, in turn, defines "person" broadly:

The term *"person"* includes any natural person or the person's legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof.

Iowa Code § 714.16(1)(*j* ).

Authorities in other jurisdictions have applied similar statutes to provide recovery for nonresidents as well as residents. See, e.g., *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304, 1312 (1983) (consumer fraud statute applied to obtain restitution for nonresidents); *Brown v. Market Dev., Inc.,* 41 Ohio Misc. 57, 322 N.E.2d 367, 372 (1974) (civil fraud case; court stated: "In a highly complex and mobile society, the components of which are intertwined and interdependent, a state may validly prohibit acts within its [b]orders where the damages resulting from those acts are much more clearly located in another state."); *Rio Grande Oil Co. v. State,* 539 S.W.2d 917, 921 (Tex. Civ.App.1976) ("A state is damaged if its citizens are permitted to engage in fraudulent practices even though those injured are outside its borders."); *State by Abrams v. Camera Warehouse, Inc.,* 130 Misc.2d 498, 496 N.Y.S.2d 659, 660 (N.Y. 1985) (same).

We conclude that our civil fraud statute provides for restitution on behalf of all consumers, including nonresidents.

### III. *Conclusion.*

Apparently, the defendants never produced the customer information requested by the attorney general. Nevertheless, the parties stipulated that, to the extent the court would find damages, $311,312.52 would be the total amount owed if paid to

all customers. This would be reduced by $2630, which had already been paid to the attorney general. The court entered a judgment accordingly, together with a civil penalty of $40,000, as provided by Iowa Code section 714.16(7). The court reaffirmed its previous order granting judgment for attorney fees and investigative costs of $50,000.

We find that these awards are supported by the evidence and therefore affirm them.

**AFFIRMED.**