**IN THE COURT OF APPEALS OF IOWA**

No. 19-1120
Filed May 13, 2020

IN RE THE MARRIAGE OF BRANDON McINNIS
AND JENNIFER McINNIS

Upon the Petition of
**BRANDON McINNIS,**
        Petitioner-Appellee,

**And Concerning**
**JENNIFER McINNIS,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.


        An ex-wife appeals the district court's refusal to continue the dissolution

trial, its finding of default, and the denial of spousal support.  **AFFIRMED.**


        Thomas J. Viner of Viner Law Firm P.C., Cedar Rapids, for appellant.

        Carolyn J. Beyer of Beyer Law Firm, P.C., Iowa City, for appellee.


        Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

In the decree dissolving the marriage between Jennifer and Brandon McInnis, the district court denied Jennifer's request for spousal support. Jennifer represented herself at the dissolution trial after the court denied her motions to continue. The court also sanctioned Jennifer for defaulting on her obligation to comply with earlier court orders. She now appeals the default order and the denial of her motions to continue. She also challenges the resulting denial of spousal support. Finding no abuse of discretion, we affirm the district court's refusal to continue the trial and its sanctions for Jennifer's defaults. Finding no failure to do equity in denying spousal support, we affirm the decree.

## I.      Facts and Prior Proceedings

Brandon and Jennifer married in December 2008. The couple did not have any children together during their twelve-year marriage. But both have children from prior relationships. Brandon has a son who is now a teenager. Jennifer has two daughters who are now adults. While they were married, Brandon helped care for Jennifer's daughters and took a parental role towards them.

Brandon was born in 1972. He graduated from Iowa State University with a degree in art and design with an emphasis in computer animation. During the marriage, he worked at HNI/Allsteel, earning a base salary of $190,000, along with a thirty percent bonus. When that company downsized, it eliminated Brandon's position. Unemployed for six months, he cashed out about $144,000 from his retirement account to meet expenses. Since July 2018, Brandon has been working as the director of web development in Framingham, Massachusetts, for a company

called SCIEX, which makes mass spectrometers. He earns $170,000 per year with a possibility of a twenty percent bonus.

Jennifer was born in 1970. She has a high school diploma and some junior college course credits. When she met Brandon in 2001, she was running a daycare center and earning between $50,000 and $60,000 per year. When Jennifer moved to Arizona to be with Brandon in the early years of their relationship, she ran a daycare center out of their home. She also has worked for an insurance company and as a realtor. When the family moved to Ohio because of Brandon's new employment, she worked as a receptionist. Her responsibilities included updating websites. Jennifer has not worked full time since the couple moved back to Iowa in 2012. But she has pursued some entrepreneurial ventures. In 2016, the couple bought their current home in North Liberty. Jennifer has tackled do-it-yourself home improvement projects there.

Brandon petitioned for divorce in March 2017 but was unable to serve Jennifer until May. In early June, Jennifer hired an attorney. In her August 2017 answer, Jennifer sought temporary and permanent alimony from Brandon and requested that Brandon pay her attorney fees and court costs. That same month, the court provided the parties with its continuance policy for civil cases. The policy expressed the court's "disfavor" for motions to continue trial. The court also set a status conference for September. At that conference, the court noted Jennifer had not filed a certificate of completion of the mediation class, an affidavit of financial status or other financial information she was ordered to disclose. She had still not completed those requirements by the November status conference. The court warned she could face financial or evidentiary sanctions, including default

judgment, from continued recalcitrance. After months of delay, Jennifer filed an affidavit of financial status in December 2017.

In January 2018, Brandon moved for default judgment alleging Jennifer failed to complete the required mediation class, provide required financial information, cooperate with scheduling mediation, or complete a stipulation of assets and liabilities and pretrial report. Jennifer's counsel filed a notice of compliance, explaining her actions on the various demands. The district court did not rule on Brandon's motion at the January status conference.

In February 2018, the court set trial for just over one year out—March 2019. In the meantime, the court set several hearing dates to consider Jennifer's request for temporary alimony. But, for all three dates—from February to May 2018—Jennifer moved to continue through her attorney. The court granted the continuances all three times.

In May 2018, Jennifer's attorney moved to withdraw—asserting Jennifer had "failed to substantially fulfill an obligation" of the legal services. The court approved the withdrawal and advised Jennifer to "immediately make efforts to engage an attorney" if she wished to be represented.

Yet by February 2019, Jennifer had not hired a new attorney. That month, Brandon asked for a default hearing after Jennifer failed to appear for a settlement and pretrial conference. The court set the default hearing for the same day as trial—March 7. In late February, Jennifer, representing herself, moved to continue the trial. She attached a letter asserting she had recently found an attorney who would represent her. She also claimed to need more time due to "a severe decline in her mental and physical health." The court denied the motion. Two days before

trial, Jennifer renewed her motion to continue and filed a third motion the day before trial. The court denied both motions and held trial on the scheduled date.

At the start of trial, the court entertained Brandon's motion for default. His counsel argued, "we have multiple incidences where Mrs. McInnis failed to comply with the existing court orders." Jennifer said she was "trying to find an attorney" but was having trouble affording one. She also told the court she was being treated for a brain tumor. Brandon's counsel noted the only medical record provided by Jennifer showed she was diagnosed with brain lipoma, a fatty cyst, which required monitoring. The court found Jennifer in default for failing to comply with numerous court orders.[1] As a sanction for the default, the court did not allow Jennifer to "introduce documents or exhibits which she had not previously disclosed or exchanged with opposing counsel."

Brandon and Jennifer both testified at the dissolution trial. Brandon believed Jennifer was capable of earning between $50,000 and $60,000 per year. He also testified he would "rather not pay spousal support." He proposed instead that Jennifer be awarded "all of [his] 401(k)" or the proceeds from the sale of the

---

[1] The court summarized its reasons for finding Jennifer in default:
> The petition for dissolution was filed on March 22, 2017 (two years ago); [Jennifer] was initially represented by counsel, but counsel withdrew on May 24, 2018; since May 24, 2018, [Jennifer] has not done anything in this case file and made no effort to comply with court orders; [Jennifer] did not produce records or documents in discovery; [Jennifer] never filed a witness or exhibit list nor updated financial affidavit; [Jennifer] failed to attend the final pretrial conference held February 12, 2019, and failed to rectify the deficiencies noted in that order; [Jennifer] did not participate in the preparation of a joint pretrial statement as required by court order; and [Jennifer] never exchanged nor filed any proposed exhibits prior to trial.

house. In her testimony, Jennifer agreed with Brandon's estimate of her earning capacity. When asked by the court what amount of spousal support she was requesting, she responded: "I've never had a number in my head." She told the court, "[A]ll I care about is the house. . . . All I want is to be able to stay in that house."

About a month after trial, the district court issued a decree dissolving the marriage. Among other items addressed, the district court denied spousal support to Jennifer. The court emphasized the marriage lasted only twelve years; the parties had no children in common; and Jennifer was voluntarily unemployed, but had marketable skills. The court also noted Brandon agreed to be responsible for $70,000 in student debt incurred by Jennifer's daughters. He also continued to pay the mortgage and utilities for the marital home where Jennifer lived, amounting to $72,000 during their two-year separation.

In addition, the court instructed the parties to list the marital home for sale. The district court ordered Brandon to continue making the monthly mortgage payments until the house sold. The court awarded the net proceeds from the house sale and Brandon's Danaher/Fidelity retirement plan to Jennifer. The house was valued at $370,000 with a mortgage encumbrance of $322,779, thus creating a theoretical net value of $37,000. The retirement plan was valued at approximately $8200.

About two weeks later, attorney William Toomey entered a limited appearance for Jennifer and moved to enlarge or amend the decree under Iowa Rule of Civil Procedure 1.904(2). The motion sought rehabilitative alimony of $4000 per month for a period of twenty-five months. Brandon resisted arguing,

"Rehabilitative alimony is inapplicable because Jennifer needs no re-education or training to obtain employment." The court accepted Brandon's argument holding, "Both rehabilitative and traditional spousal support are inapplicable because Jennifer does not need a period of education and retraining and is not incapable of self-support. She has run her own business; she is capable of earning at least $50,000-$60,000 per year."

Jennifer now appeals the court's rulings, contending the decree was unfair.

## II.     Scope and Standards of Review

Our overarching scope of review is de novo for dissolution appeals. *See In re Marriage of Hansen,* 733 N.W.2d 683, 690 (Iowa 2007). We give weight to the district court's factual findings, particularly where it makes credibility determinations. *Id.* In determining spousal support, the district court is best positioned to evaluate the needs of parties. *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015). Thus, "we should intervene on appeal only where there is a failure to do equity." *Id.*

We review the denial of a motion to continue for abuse of discretion. *See In re Marriage of Ihle*, 577 N.W.2d 64, 68 (Iowa Ct. App. 1998). Likewise, the decision to grant a motion for default judgment rests in the district court's discretion. *See In re Marriage of Morton*, No. 14-1002, 2015 WL 1331686, at *2 (Iowa Ct. App. Mar. 25, 2015). We will reverse on appeal only if the court abuses that discretion. *Id.* Upon a finding of default, the court is allowed to "award any relief consistent with the petition and embraced in its issues." Iowa R. Civ. P. 1.976.

### III. Analysis

### A. Motion to Vacate Default

Jennifer first claims the motion to enlarge and amend under rule 1.904(2) filed by attorney Toomey should be construed as a motion to vacate under rule 1.977. She argues if the March 2019 hearing was "a hybrid default and trial" then a request to undo the outcome should be considered a hybrid of both rules.

Brandon contests that proposed construction. Challenging error preservation, he contends Jennifer's post-trial motion did not meet the requirements of rule 1.977. That rule allows the court to "set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty." By contrast, Jennifer's motion sought "to reconsider, enlarge, amend, and modify" the district court's findings of fact and conclusions of law in the decree. *See* Iowa R. Civ. P. 1.904(2).

We agree Jennifer failed to preserve error on this issue. Her post-trial motion did not mention the default finding or argue good cause for setting aside the sanctions imposed by the court or the overall judgment. *See Hastings v. Espinosa*, 340 N.W.2d 603, 608 (Iowa Ct. App. 1983) (stressing burden is on movant to plead and prove good cause to vacate the default or judgment). In ruling on the rule 1.904(2) motion, the court naturally did not consider whether to set aside the default. Without a ruling under rule 1.977, we have nothing to review. *See Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 600 (Iowa 1998) (holding error not preserved when "motion to vacate did not set forth any grounds on which relief could be granted").

**B.** **Motions to Continue**

In a second procedural issue, Jennifer contends the district court abused its discretion in denying her motions to continue. She claims any prejudice to Brandon from postponing the dissolution trial until she secured counsel would have been negligible.

Iowa Rules of Civil Procedure 1.910 and 1.911 govern motions for continuance by the parties. Rule 1.910 requires parties to move for continuance "without delay after the grounds therefor become known." Rule 1.911 discusses "causes for continuance." It states: "A continuance may be allowed for any cause not growing out of the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained." *See* Iowa R. Civ. P. 1.911(1). "The concept of 'substantial justice' favors a trial which allows both parties an opportunity to fully and fairly develop their claims and defenses without prejudice to the other party." *Ragan v. Petersen*, 569 N.W.2d 390, 394 (Iowa Ct. App. 1997).

Because we leave the decision whether to continue an action in the district court's discretion, Jennifer bears a heavy burden in challenging the court's refusal to delay trial. *See State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 595 (Iowa 2004).

Back in August 2017, the court issued an order highlighting the fact that continuances were disfavored.[2] The order placed Jennifer on notice that the court expected the parties to abide by the rules of civil procedure. The court set the trial date more than one year in advance. When Jennifer's attorney withdrew in May

---

[2] The time standards for scheduling contemplate court administration will set dissolution cases for trial within nine months of filing. Iowa Ct. R. 23.2(1)(g).

2018, the court advised her not to delay in finding new representation. But nine months went by without her securing an attorney. Less than two weeks before the trial date she asked for more time to retain new counsel. She unsuccessfully renewed her request for a continuance two more times.

The court found Jennifer did not show good cause for extending the trial date. After our de novo review of the record, we agree with that finding. Jennifer had plenty of opportunity to prepare for trial or obtain counsel. And contrary to her argument on appeal, Brandon did face substantial prejudice from continuing the trial. His obligation to pay for the mortgage and utilities at the North Liberty house was ongoing. He also expended resources to prepare for trial and travel from Massachusetts to Iowa for the scheduled proceeding. We find no abuse of discretion in the denial of her motions to continue.

### C.    Denial of Spousal Support

The two divisions of Jennifer's brief focus on procedural issues. Bottom line though, she objects to the court's denial of her request for spousal support. As one of her proposed remedies, she asks that we remand "with instructions that Jennifer receive $4000.00 a month in alimony for 10 years." That request far exceeds the duration of rehabilitative alimony sought in her post-trial motion.

In determining a spousal support award, we consider the non-exhaustive list of factors in Iowa Code section 598.21A(1) (including (1) the marriage's length; (2) the parties' ages and physical and emotional health; (3) the property distribution under section 598.21; (4) the educational attainments of the parties; (5) their relative earning capacities; (6) the feasibility of the party seeking maintenance to become self-supporting at a standard of living reasonably comparable to that

enjoyed during the marriage and the length of time necessary to achieve this goal; (7) tax consequences; and (8) any mutual agreements").

Iowa courts recognize three kinds of spousal support: "traditional, rehabilitative[, and] reimbursement alimony." *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015) (citing *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005)). Sometimes those categories overlap. *In re Marriage of Becker,* 756 N.W.2d 822, 827 (Iowa 2008).

Here, the marriage did not last long enough to merit serious consideration for traditional alimony. *See Gust*, 858 N.W.2d at 410–11 (discussing twenty or more years as the common "durational threshold" for traditional spousal support"). And no other factors weigh in favor of permanent spousal support. Jennifer acknowledged at trial she "historically" was capable of earning between $50,000 and $60,000 per year.

So we turn to Jennifer's request for rehabilitative alimony. That kind of stipend is "a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *Becker*, 756 N.W.2d at 826. Jennifer provided no information at trial that she needed economic assistance from Brandon in retooling her job skills.

On appeal, Jennifer contends she lacks "the ability to compete on an even playing field" with Brandon because she "sacrificed throughout their marriage, had not worked, [and] had inferior education." Brandon counters that "there is no evidence that Jennifer sacrificed throughout the marriage." He also argues that "[i]t is likely Jennifer can become self-supporting immediately."

As we examine the equities, we recognize the gap between Brandon's income and Jennifer's earning capacity. Yet we do not see evidence that Jennifer gave up career opportunities of her own to contribute to Brandon's advancements. *See generally In re Marriage of Palmer*, No. 09-1733, 2010 WL 3894578, at *3 (Iowa Ct. App. Oct. 6, 2010) (upholding denial of spousal support in twelve-year marriage when the record included "no evidence [wife's] short absence [from the workforce] jeopardized her employment opportunities"). Under Iowa law, Jennifer has no "absolute right" to alimony payments. *See Becker*, 756 N.W.2d at 825. She has chosen to be out of the workforce in recent years. But she has experience running her own business and has many marketable skills. She has worked in insurance, real estate, and website development. At the time of trial, she was under fifty years old. The record did not support her claims of any serious health issues. And she has no minor children to support.

Plus, we don't look at spousal support in isolation. *See In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998) (considering property division and spousal support together in evaluating their individual sufficiency). True, these parties did not have large assets to divide. But they did have equity approaching $40,000 in the marital residence. The court awarded that asset to Jennifer, along with the $8200 in Brandon's retirement plan. In addition, Brandon continued paying the mortgage and utilities for more than two years during their separation. That time period offered Jennifer a cushion to apply the expertise she developed before and during marriage to support herself. Her work experience and computer skills place her in a good standing to become self-supporting.

We find no failure to do equity in the district court's denial of spousal support. We divide the costs of the appeal equally between the parties.

**AFFIRMED.**