**IN THE COURT OF APPEALS OF IOWA**

No. 19-0129
Filed June 3, 2020

**CITY OF OTTUMWA,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**LARRY D. CLABAUGH,**
        Defendant-Appellant/Cross-Appellee,
_____

        Appeal from the Iowa District Court for Wapello County, Shawn R. Showers

(default entry) and Greg G. Milani (judgment entry), Judges.


        A property owner appeals the entry of default judgment for the city of

Ottumwa.  **AFFIRMED.**


        S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellant.

        Nicholas T. Maxwell and Michael J. Moreland of Harrison, Moreland,

Webber, Simplot & Maxwell, P.C., Ottumwa, for appellee.


        Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Larry Clabaugh owns residential property in Ottumwa. The city alleges he used that property to store junk motor vehicles—violating zoning ordinances. Asserting his actions created a nuisance, the city petitioned for declaratory judgment and injunctive relief. After considerable legal wrangling, the city won a default judgment. Clabaugh now appeals.[1] Finding the district court properly denied the continuance and entered default judgment for the city, we affirm.

## I.     Facts and Prior Proceedings

Clabaugh is a resident of Oskaloosa but owns real estate in Ottumwa. His thirteen-acre property includes a house on North Court Street and adjacent undeveloped real estate. The city classified both parcels as "R1 Single Family Residential Zoning." He also owns a used car and salvage operation in Oskaloosa known as Clabaugh Enterprise. For that business, he has a dealer license and a vehicle recycler's license from the Iowa Department of Transportation (IDOT).

After Clabaugh bought the Ottumwa property in August 2016, he removed the front yard and landscaping, replacing it with gravel. He also cleared timber. Soon the city received complaints from neighbors about the debris and erosion. And Clabaugh hauled junk motor vehicles onto the property. Next Clabaugh posted a sign advertising a future auction and advised Ottumwa's mayor that he planned to sell hundreds of cars from that site.

---

[1] The city cross-appeals a January 2018 order setting aside the November 2017 default judgment. Given our rejection of Clabaugh's challenge to the second default judgment involving the same issues, we need not reach the merits of the cross-appeal claim.

The city's response started in the fall of 2016. That September, a zoning technician notified Clabaugh he was violating city ordinances by accumulating junk vehicles, trash, weeds, and brush piles. Clabaugh did not resolve the issues. So in January 2017, the city attorney sent a letter advising Clabaugh that his land was zoned residential and commercial activities were prohibited. The next month, the city sent Clabaugh an order to abate and listed all nuisance and zoning violations. The city set an abatement deadline of March 10, 2017. Clabaugh asked for a hearing. The city set a hearing for March 21, but Clabaugh did not attend. The city tried to negotiate with Clabaugh to resolve the violations. But he did not cooperate.

In response to his recalcitrance, the city moved to enforce the ordinances. That enforcement included citations for conducting commercial auto activities and storage, building a fence without a permit, and blocking access to adjacent property. The city also cited Clabaugh for using his residential property as a dump site for cement, rebar, wood, and other materials. Plus, the city ticketed Clabaugh for failing to cut the grass to the required height.

After exhausting remedies to secure Clabaugh's compliance, the city's health director applied for a temporary injunction with the district court. Following an April 2017 hearing, the district court granted the injunction. Later the court approved a consent order. Clabaugh agreed to refrain from the prohibited activities. In return, the city promised to dismiss some citations.

Yet problems persisted. For example, Clabaugh's property had sidewalk mud and silt, a broken fence, and grass and weed violations. That summer, the

city issued twenty-three citations to Clabaugh. In August 2017, the city applied to transfer those citations to district court.

The court set trial for November 2017. The city scheduled a deposition for October. But on the day of the deposition Clabaugh called to say he wouldn't attend. He also failed to attend a second scheduled deposition. When it was time for trial in November, Clabaugh was again a no-show. Following his unexcused absence, the district court entered a default judgment against him.

Four days later, Clabaugh moved to set aside the default judgment. He claimed he could not attend the trial because he underwent surgery in late October after falling into an uncovered storm sewer. The district court granted the motion to set aside judgment in January 2018 and rescheduled trial for September.

In May 2018, the city issued a third notice of deposition. Clabaugh declined to attend for medical reasons. In September 2018, Clabaugh appeared for settlement negotiations on the day of trial. After meeting for about ninety minutes, the parties failed to agree. As the trial was about to start, Clabaugh asked for a continuance. He told the court that he had ankle surgery two weeks earlier and remained under the effects of pain medication. He also asserted he would need to have his foot elevated and staying in the courtroom would impede his ankle's healing process.

Clabaugh's counsel suggested if the court denied the continuance and his client could not remain in the courtroom, "that would subject him to a default under Rule 1.971." Counsel insisted he needed his client to be present to defend against

the many citations. Counsel described the proceedings as "quasi-criminal" because Clabaugh faced potential fines of more than $12,000.

Unconvinced, the court denied the continuance. It reasoned:

This case has been pending for a year and a half now. We've been through one default and one motion to set aside a default. My fear is if we continue this case, that we may never get it resolved, because the excuses that have been put on the record here are troubling to the court.
 The City of Ottumwa has a right to get these issues resolved, and a letter from a doctor the day before or the day of trial is not sufficient cause for me to continue this matter. So we will proceed with trial. If Mr. Clabaugh is not going to be here, then we'll proceed with the default hearing.

Clabaugh's counsel made the following statement:

Now, I have advised Mr. Clabaugh that there can be two consequences of [leaving the courtroom]. One, we could be defaulted under the rule I cited previously. Or secondly, depending on the court's ruling, I would have to attempt to represent Mr. Clabaugh's interest as best I can without him present. I don't know if he can come back for a short time to testify or not, but he certainly cannot sit and stand in this courtroom. . . .

The court replied:

If Mr. Clabaugh is unable to be here, then it will be a default judgment entered against him, which would be the second one of this proceeding. If that is his choice, that is how we will proceed.

In the face of those consequences, Clabaugh left the courtroom. The district court found him in default. At the request of Clabaugh's attorney, the court set another hearing to determine the appropriate remedies.

In October 2018, the parties appeared for a hearing on the default remedies. The court confirmed the entry of default judgment for the city. The court found Clabaugh guilty of twenty-three ordinance violations and imposed fines of $250, plus $85 in court costs, on each offense (totaling $7705). The court also found

Clabaugh's thirteen-acres lot was subject to abatement. And the court issued injunctions against Clabaugh for the storage of junk vehicles, the holding of auctions, construction of any fence or building, and interfering with the city's access to abate the violations. Clabaugh appeals, raising two issues: (1) the district court's refusal to continue the trial and (2) the court's entry of default judgment.

## II.    Scope and Standards of Review

We review the denial of Clabaugh's motion to continue for an abuse of discretion. *See Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 515 (Iowa 2012). Similarly, whether to order default judgment rests in the sound discretion of the district court. *Id.* We reverse only if the court abuses that discretion. *Id.* If this case turns on the court's interpretation of Iowa Rule of Civil Procedure 1.971(3), we review for the correction of errors at law. *See id.*

## III.    Analysis

### A.    Did the district court abuse its discretion in denying Clabaugh's motion to continue?

Because he presented medical evidence in support of his motion to continue, Clabaugh contends the district court abused its discretion in denying his motion to continue. He contends the denial caused him an injustice, citing *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996), and *State v. Leutfaimany*, 585 N.W.2d 200, 209 (Iowa 1988).[2] He emphasizes his several ankle surgeries and the letter from his treating physician presented on the day of trial.

---

[2] In both cases, the appellate courts found no abuse of discretion in the denial of motions to continue.

The court may grant a continuance "for any cause not growing out of the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained." Iowa R. Civ. P. 1.911(1). That rules leaves broad discretion with the district court. *See State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 595 (Iowa 2004). We presume the court correctly denied the continuance. *See id.* And Clabaugh bears a heavy burden in proving otherwise. *See Rattenborg by Rattenborg v. Montgomery Elevator Co.*, 438 N.W.2d 602, 605 (Iowa Ct. App. 1989).

In denying the continuance, the court noted the case had been pending for eighteen months—with a prior default judgment set aside. The court was skeptical of Clabaugh's excuses. The eleventh-hour letter from Clabaugh's doctor did not satisfy the court's concerns. It believed the city deserved a more timely resolution of the nagging issues.

We defer to the district court's findings. While not outright discrediting Clabaugh's medical explanation, the court did not believe the scheduling of his ankle surgery automatically trumped the timely resolution of his legal troubles. The court was reasonable in evaluating the circumstances. Clabaugh waited until the day of trial—and after his negotiations with the city reached a stalemate—before informing the court of his health condition. The court was right to doubt the credibility of Clabaugh's assertion he could not stay in the courtroom until the city called its single witness. The record does not support Clabaugh's contention that the continuance was necessary to prevent injustice. And the city had a right to timely enforcement of its ordinances. Delaying resolution would not have brought substantial justice for Clabaugh's neighbors and other concerned citizens.

Clabaugh did not meet his burden to show the court abused its discretion in denying his request for a continuance.

### B. Did the district court err by entering default judgment when his attorney appeared to represent him?

Clabaugh next contends the district court was remiss in finding him in default under rule 1.971(3). He contends entry of default was not justified because his counsel was present and ready to proceed without him. *See Jack*, 822 N.W.2d at 515. In *Jack*, our supreme court declined to interpret rule 1.971(3) to permit entry of default judgment against a party who fails to appear personally for trial when the party's lawyer is present and able to proceed in the party's absence. *Id*. The *Jack* court held, "[T]here is no reason why a plaintiff in a civil trial should be required to appear personally when his or her presence is not 'reasonably necessary.'" *Id.* (citing *Myers v. Emke*, 476 N.W.2d 84, 85 (Iowa 1991)).

The city distinguishes *Jack*, arguing defendant Clabaugh's presence was reasonably necessary to conducting the "quasi-criminal" trial. Indeed, defense counsel said as much at the opening of the trial:

> I need my client to assist his counsel during this trial as the evidence comes in, and I need my client to be able to testify in order for me to put a credible defense against these numerous citations that he has against him. I cannot do that without my client's presence.

The city's attorney agreed Clabaugh was a vital witness. Under these facts, Clabaugh's absence would have prevented the district court from "adequately functioning and dispensing justice." *Id.* at 517.

To bolster its position, the city asserts defense counsel did not express a clear intent to defend in his client's absence. The record supports that assertion. Defense counsel anticipated his client faced default if he left the courtroom after

the court denied the motion to continue. A party may not take one position at trial and a polar opposite argument on appeal. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court."). On this record, the district court properly entered default under rule 1.971(3).

**AFFIRMED.**